Steven C. Vondran, [SBN 232337]
**THE LAW OFFICES OF STEVEN C. VONDRAN, PC**
One Sansome Street, Suite 3500
San Francisco, CA 94104
Telephone: (877) 276-5084
Facsimile: (888) 551-2252
E-mail:  steve@vondranlegal.com

*Attorneys for Defendant identified as IP Subscriber 76.102.26.213*

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC. | Case No. 5:19-cv-08239-VKD |
|      Plaintiff, | Honorable Judge: Virgina DeMarchi |
| Vs. | |
| JOHN DOE subscriber assigned IP address 76.102.26.213 | **NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA AND TO DISMISS CASE UNDER F.R.C.P 41, F.R.C.P. 11.  MEMORANDUM OF POINTS AND AUTHORITIES.** |
|      Defendant. | *[Proposed Order, and declaration or counsel filed concurrently]* |
| | <u>Hearing</u><br>Date:  April 14, 2020<br>Time: 10:00 AM<br>Courtroom: 2 |

## <u>NOTICE OF MOTION TO QUASH SUBPOENA AND TO DISMISS</u>

## <u>CASE UNDER F.R.C.P. 41(A)</u>

TO STRIKE 3 HOLDINGS, LLC ("PLAINTIFF") AND ITS ATTORNEYS OF RECORD: NOTICE IS HEREBY GIVEN that before the Honorable Judge Virgina DeMarchi, the John Doe internet subscriber identified above ("Defendant") will move this Court to quash the early discovery subpoena and for dismissal on April 14, 2020 date at 10:00 AM time (or as soon thereafter as the case may be heard) at 280 1st Street, San Jose, California 95113, place and this motion will be based upon this Notice of Motion and Motion, the Declaration of Steven C. Vondran, Esq., the memorandum of points and authorities, the pleadings and documents on file in this case, any request for judicial notice, and on any evidence as may be presented at the hearing on this motion.

This motion will seek to quash the subpoena and to dismiss Plaintiff's case with prejudice, under F.R.C.P. Rule 41.   The motion is made following the several meet and confer discussions and conference of counsel which took place on multiple occasions including on February 8th, 11th and on the 27th of 2020 by email and by phone on February 12, 2020.

RESPECTFULLY SUBMITTED

DATED: March 3, 2020

THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.


By:   /s/  Steven C. Vondran

Steven C. Vondran, Esq., Attorney for    Defendant internet subscriber,
steve@vondranlegal.com
Phone: (877) 276-5084
Fax: (888) 551-2252

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*In Strike 3 Holdings, LLC, Plaintiff, v. John Doe, subscriber assigned IP address 24.118.185.57,* United

5

States District Court, D. Minnesota, (May 4, 2018)…………………………………………...……..

6

7

*Strike 3 Holdings, LLC v. Doe,* Case No. 3:17-cv-02316-GPC-KSC, 2018 WL 324264, at *3 (S.D. Cal. Jan. 5, 2018) ……………………………………………………………………………...……..

8

*Strike 3 Holdings, LLC v. Doe,* Civil Action No. 17-cv-2347 (TJK), 2018 WL 385418, at *2 (D.D.C.

9

Jan. 11, 2018). …………………………..…………………………………………………………..

10

*Strike 3 Holdings, LLC v. Doe*, 2019 U.S. Dist. LEXIS 70286…………….…………………….

11

12

*Chevron Corp. v. Donziger*, No. 3:12-mc-80237-CRB, 2013 U.S. Dist. LEXIS 119622, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) …………….…………………………………….…...

13

14

*Optimize Tech. Solutions, LLC v. Staples, Inc*., No. 5:14-mc-80095-LHK, 2014 U.S. Dist. LEXIS 52214, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014)…………………………………….

15

*Arista Records, LLC vs. Doe 3*, 604 F.3d 110,118 (2nd Cir. 2010)………………………………..

16

*Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)…………………

17

*Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d

18

637, 642 (9th Cir. 1980)). …………….………………………………………………………….

19

*Nevijel v. North Coast Life Ins. Co.,* 651 F.2d 671, 673 (9th Cir.1981)…………………………

20

*Buss v. Western Airlines, Inc*., 738 F.2d 1053 (9th Cir. 1984), U.S. , 105 S.Ct. 968, 83 L.Ed.2d 972

21

22

(1985)………………………………………………………………………………………..

23

*Chism v. National Heritage Life Insurance Co*., 637 F.2d 1328 (9th Cir. 1981)…………………..

24

25

26

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

1   *Transamerica Corporation v. Transamerica Bancgrowth Corp.*, 627 F.2d 963 (9th Cir. 1980).

2   ………………..………………..……………..…………..…………..…………………………….

3   *Al-Torki v. Kaempen*, 78 F.3d 1381, 1383-85 (9th Cir.1996))…………………………………………

4
5   *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 912 (9th Cir.1986)…………………………..

6   *U.S. v. Shaffer Equipment Co.*, 11 F.3d 450, 461 (4th Cir. 1993)…………………………………..

7   *Leon vs. IDX* 464 F.3d 951 (9th Cir. 2006)……………………………………………………………….

8   *In re Eisen*, 31 F.3d at 1453 (quoting *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976))

9   …………………..…………………..……………..…………..………..…………………………..

10  *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991) …………………………….

11
12  *Nealey v. Transportacion Maritima Mexicana*, S.A., 662 F.2d 1275, 1281 (9th Cir. 1980)).

13  …………………..…………………..……………..…………..………..……………………..

14  *Hernandez v. City of El Monte*, 138 F.3d 393, 401 (9th Cir. 1998) *In re Eisen*, 31 F.3d at

15  1453…………………..……………..……………..……………..…………..……………………….

16  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)…………………………………………….

17  *Cobbler Nevada v. Gonzales*, 2018 WL 4055766 (9th Cir. Aug. 27, 2018)………………………

18  *Strike 3 Holdings, LLC v. Doe* (D.N.J. Oct. 24, 2019, No. 18-2674 (JHR/JS)) 2019 U.S.Dist.LEXIS

19  184513…………………..……………..……………..……………..……………..……………….

20
21  *Wakefield v. Thompson,* 177 F.3d 1160, 1163 (9th Cir. 1999) …………..……………….…..

22  *Breaking Glass Pictures, LLC v. John and Jane Does 118-162, et al.*, No. CV-13-00600-PHX-ROS;
    2013 U.S. Dist. LEXIS 106565, 2013 WL 3930474, at *2 (D. Ariz. July 29,
23  2013) …………..……………..…………..…………..……………..……….................

24

25

26
    MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

*Criminal Productions, Inc. v. Doe*, Case No. 16-cv-2352 WQH (JLB), 2016 U.S. Dist. LEXIS 154381, 2016 WL 6581850, at *1 (S.D. Cal. Nov. 7, 2016) ……………………………………………….

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). …………………………..………………………..…………………..…………………………

*Venice PI, LLC v. Huseby*, No. C17-1160 TSZ, 2019 U.S. Dist. LEXIS 62856, 2019 WL 1572894, at *1 (W.D. Wash. Apr. 11, 2019) ……………..…………………………………………………

*Malibu Media, LLC v. John Doe Subscriber*, No. 18C450, 2018 U.S. Dist. LEXIS 207655, 2018 WL 6446404, at *3 (N.D.Ill. Dec. 10, 2018) ………..………..…………………………………….

*Breaking Glass Pictures, LLC*, 2013 U.S. Dist. LEXIS 106565, 2013 WL 3930474, at *2 ……………..…………………….…………….……………………..……..…………………….

*Strike 3 Holdings, LLC v. Doe,* 351 F. Supp. 3d 160, 164 (D.D.C. 2018) ………..……………….

*PTG Nevada, LLC v. Chan*, No. 16C1621, 2017 U.S. Dist. LEXIS 6276, 2017 WL 168188, at *2 (N.D.Ill. Jan. 17, 2017) ……………..……………………………………………………………

*In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) ……………………………………………………………………………….........................................

*Malibu Media, LLC v. Doe*, No. 15 CIV. 4369(AKH), 2015 WL 4092417 (S.D.N.Y. July 6, 2015) ……………..……………………………………………………………………..

*Strike 3 Holdings, LLC v. John Doe*, No. 19-CV-00723-JCS, 2019 U.S. Dist. LEXIS 113919, 2019 WL 2996428 (N.D.Cal. July 9, 2019) ……………..…………………………………………………….

*Wright v. Spaulding*, 939 F.3d 695, 2019 WL 4493487, at *5 (6th Cir. 2019) …………………..

*Malibu Media v. Joe Park*, No. 17-12107 (JMV)(MF), 2019 U.S. Dist. LEXIS 113434, 2019 WL 2960146 (D.N.J. July 9, 2019) ……………..……………………………………………………

*Patrick Collins, Inc. v. John Doe 1, 288 F.R.D. 233, (E.D.N.Y. 2012)*……………………………..

*Malibu Media v. Park*, No. 17-12107 (JMV)(MF), 2019 U.S. Dist. LEXIS 113434, 2019 WL 2960146, at *6 (D.N.J. July 9, 2019) ……………..……………………………………………………………

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

*Strike 3 Holdings, LLC v. Doe*, 331 F.R.D. 14, 20 (E.D.N.Y. 2019) ………………………………..

*Hard Drive Productions, Inc. v. Does 1-90*, No. C11-03825HRL, 2012 U.S. Dist. LEXIS 45509, 2012 WL 1094653, at *7 (N.D. Cal. Mar. 30, 2012) …………………………………………………………..

**Statutes**

*F.R.C.P. 45*………………………………………………………………...…………………….

47 U.S.C. § 551(c)(1)………………………………………………………….......................

*F.R.C.P. 12(b)*………………………………………………………..……………………….

*F.R.C.P. 41*………………………………………………………..……………………………

*F.R.C.P. 11*………………………………………………….……………………………….

*F.R.C.P. 8(a)*………………………………………………….………………………………..

**Secondary Materials**

*Charles A. Wright & Arthur R. Miller*, Fed. Prac. & Proc. §2459 (3d ed. 2008)……......................

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

**MOTION TO QUASH SUBPOENA AND TO DISMISS CASE UNDER <u>F.R.C.P. 41 ET</u>**

**<u>SEQ.  LEGAL ARGUMENT</u>**

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**A.  BACKGROUND / KEY FACTS**

This is a case of first impression. Plaintiff is a serial filer of copyright infringement actions in the United States.  They have filed thousands of lawsuits, such that, no introduction is likely required. They have filed thousands of lawsuits across federal courts around the entire United States.  However, recently, they have employed a new litigation tactic that abuses the legal court process, and abuses and unreasonably burdens and prejudices Defendants.  This conduct must be stopped.

Specifically, (after having been reeled in by the 9th circuit *Cobbler Nevada* case in 2018) Plaintiffs have been burdened by having to show "*something more*" than the mere fact that an internet subscriber has an internet account to bring a complaint against the subscriber for copyright infringement.   Plaintiff's complaints contain *boilerplate*  conclusory and wholly unsupported allegations that an internet subscriber at a particular IP address (who may not even have been the subscriber at the time of alleged infringement) has committed infringement "on a widespread scale." Yet, Plaintiff makes these allegations having no clue if the subscriber is also the infringer.  *Cobbler Nevada* said this type of pleading does not pass muster and is subject to a motion to dismiss.  Plaintiff's do not, and cannot allege the "something more" required by *Cobbler Nevada*.  The complaint, as it sits, is deficient and subject to a motion to dismiss.

1    Thus, as an initial matter, their pleading does not meet the standards of Rule 11. This case

2    being the <u>second time</u> this case has been filed against Defendants, Plaintiff's seek to delay, harass and

3    intimidated Defendant into a "shame settlement."

4    ***<u>Forum Shopping</u>***

5        Plaintiff counsel, the Bandlow Law Firm, has indicated in a previous email to counsel that it

6    is "*99% certain*" that the proper jurisdiction to bring a copyright infringement claim in regard to

7    Defendants they name in (a slew) of California cases, is in fact California**.  (See Vondran**

8    **Declaration).**

9        Nevertheless, in an attempt to circumvent the law (*Cobbler Nevada*) and seek a unique way to

10   accumulate as many "leads" as possible (i.e. to unmask internet subscribers to "shake-down" with out

11   of court settlement demands, many times with a 50k starting offer) with adult pornography settlements

12   Plaintiff has employed a new litigation strategy which started on or around November 2019, which

13   involves Plaintiff's using a Florida law firm (the *Mamome Law Firm*) to file a <u>STATE COURT CASE</u>

14   in Florida (Federal Copyright law pre-empts state law) seeking a "bill of discovery" which is designed

15   to unmask the internet subscriber and invade their privacy.

16

17       The Florida state court cases have been filed in mass (ex. in Miami-Dade County). These

18   actions allege the same boilerplate claims of copyright infringement and seeks a "bill of discovery" (a

19   legal procedure that is being completely misused and exploited as the process only exists for a very

20   limited circumstance) and seeks the name and address of internet subscribers for unmasking and future

21   harassment purposes.  Plaintiff has no idea whether or not these subscribers are also "infringers" of

22   their adult movies "*Blacked, Tushy, and Vixen*" or not.  It is a matter of <u>pure speculation</u>.  Cobbler

23   demands more than plausibility it demands "something more" than just suing an internet subscriber.

24

25

26

8

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

When these subscribers (known to Plaintiff to be California-based for venue and jurisdictional purposes – See **Vondran Declaration**) challenge the Bill of Discovery procedure in Florida state court through the use of paid and retained counsel, Plaintiff engages in a curious "cut and run" strategy and immediately dismisses their case in the state court.

This has happened in many cases (believed to be over 100 and the cases continue to be filed in mass).   Plaintiff is, or should be aware, based upon its own admissions, that there is no jurisdiction/venue over the Defendants in Florida (where they know the Plaintiff does *not* reside). Thus, they know or should know there actions in filing a state court copyright-related action is not proper.  Yet, they boldly challenge the Defendant to file a motion to quash if they don't like it while admitting it will raise costs.  **(See Vondran Declaration)** and "cut and run" if they do only to pursue them a second time in California, as is being done here.  The Florida court case offers nothing that Plaintiff's cannot get in a federal case – just a name and address (no infringement evidence is provided).

Not to be deterred, Plaintiff's "*go from the East Coast to the West coast*" and they then file the same action, with the same boilerplate and unsupported allegations in Federal court (this Court), where it claims it knew with 99% certainty should have been filed in California in the first place. ***They once again challenge the same subscriber to file another motion to quash.***  This naturally raises the costs to the Defendant (who Plaintiff does not even know whether or not they are really an infringer or not, "it's plausible" they say), and causes further unreasonable delay in the bringing and prosecution of their purely speculative case.  This type of forum shopping is completely improper and abuses the legal process and causes additional costs and delays and potential for lost evidence at the ISP level (as they do not keep records very long in most cases) as Strike 3 admits in its own pleadings.  See **Exhibit "A" page 7 highlighted portion.**

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

Thus, by not bringing the case in Federal court in the first instance, where they should bring if they actually can meet the *Cobbler* standard, they are causing a host of abuses and failing to bring their case in "good faith" as required per rule 11, and continue on a path to harass and intimidate internet subscribers, unmask and invade their privacy, taking a second bite at the apple after their "cut and run" strategy and improperly burden and prejudice Defendants across California.

This conduct is highly irregular, and the Courts have the inherent power to quash the subpoena under these circumstances, and to in fact dismiss this case with prejudice under Rule 41(a) for improperly delaying the case by filing bogus cases in Florida state court that it has no intention of pursuing, risking the loss of evidence that can help a Defendant prove they are not an infringer, and only an internet subscriber.

**B.  STANDARD OF REVIEW / ARGUMENT:**

i.      *F.R.C.P. 45 Motion to Quash Subpoena*

*Under F.R.C.P. Rule 45:*

On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**"(iii) requires disclosure of privileged <u>or other protected matter</u>, if no exception or waiver applies; or (iv) subjects a person to <u>undue burden</u>."** (emphasis added)

Here, Plaintiff seeks to violate Defendant's right of privacy under the *Federal Cable Privacy Act* by unmasking their identity and seeking their name and address for the sole purpose of obtaining their name and then harassing them in pursuit of a "*shame settlement*" notwithstanding the fact they have no actual evidence Defendant is an infringer of their adult films and videos.

The Court should not fuel and support this speculation and is not required to do so.  Moreover, under these special circumstances (taking two bites of the apple / forum shopping) forcing Defendant

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

1
2
3
4
5

to file a SECOND motion to quash creates an undue burden and risks ISP evidence being lost.  Even Strike 3 in its own pleadings states that ISP information/evidence is LIMITED in duration which makes it important to move fast for early discovery (see Attached **Exhibit "A" P.7** for Plaintiff's own words in a Florida pleading recently filed in response to an OSC).

6
7
8

Yet, Plaintiff by filing a bogus action in Florida state court, that it has no intention of pursuing, and has not pursued when challenged, does nothing more than abuse the process, and cause further delay in the case.

9
10
11

*In Strike 3 Holdings, LLC, Plaintiff, v. John Doe, subscriber assigned IP address 24.118.185.57,* United States District Court, D. Minnesota, May 4, 2018 the Court noted:

12
13
14
15
16
17
18
19
20
21
22
23

> "The Communications Act provides that a cable operator "shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned." 47 U.S.C. § 551(c)(1). While the Communications Act does not establish that a subscriber has an absolute right to privacy in the discovery context, the Act and its notice provisions are worth considering. *See, e.g., Strike 3 Holdings, LLC v. Doe,* Case No. 3:17-cv-02316-GPC-KSC, 2018 WL 324264, at *3 (S.D. Cal. Jan. 5, 2018) (explaining that the Act "generally prohibits cable operators from disclosing personally identifiable information regarding subscribers without the prior written or electronic consent of the subscriber," **Strike 3 Holdings' John Doe copyright lawsuits raise unique privacy concerns. The John Doe subscriber may not be the individual who infringed upon Strike 3's copyright. The "true infringer could just as easily be a third party who had access to the internet connection, such as a son or daughter, houseguest, neighbor, or customer of a business offering an internet connection."** *Strike 3 Holdings, LLC v. Doe,* Civil Action No. 17-cv-2347 (TJK), 2018 WL 385418, at *2 (D.D.C. Jan. 11, 2018). **Also, there is a "real risk that defendants might be falsely identified and forced to defend themselves against unwarranted allegations" and that "the innocent defendant may be coerced into an unjust settlement with the plaintiff to prevent the dissemination of publicity surrounding unfounded allegations."** *Id.* Anonymity may be necessary to preserve privacy in a matter of a sensitive and highly personal nature—**especially when the actual infringer cannot be determined based on the subscriber information alone.**" (emphasis added).

24
25
26

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

The Courts do not have to force one to comply with a subpoena where the complaint is subject to a motion to dismiss and would be subject to dismissal under F.R.C.P. 12(b), especially where important privacy interests are at stake.  If the Florida state court suit was proper, they should fight it in Florida instead of raising costs, delaying this action, and taking another bite at the apple in this Court alleging the same thing.

Another federal court case supports this position, in *Strike 3 Holdings, LLC v. Doe*, 2019 U.S. Dist. LEXIS 70286 the Court noted:

> "Generally, "a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." *Drummond Co., Inc. v. Collingsworth*, 2013 U.S. Dist. LEXIS 163971, 2013 WL 6074157, at *15 (N.D. Cal. Nov. 18, 2013) (quoting 9A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2459 (3d ed. 2008)). **If good cause is shown, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or <u>undue burden or expense, including . . . forbidding the disclosure or discovery</u>.**" Fed. R. Civ. P. 26(c)(1)(A). The moving party bears the burden of persuasion on a motion to quash, but the party issuing the subpoena must demonstrate that the discovery is relevant. See, e.g., *Chevron Corp. v. Donziger*, No. 3:12-mc-80237-CRB, 2013 U.S. Dist. LEXIS 119622, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (citation omitted); see also *Optimize Tech. Solutions, LLC v. Staples, Inc*., No. 5:14-mc-80095-LHK, 2014 U.S. Dist. LEXIS 52214, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014). (emphasis added)

Again, by filing two actions pursuing one goal – unmasking an internet subscriber (not knowing if an infringer or not) invades privacy, wastes judicial resources, and being improper, is subject to denial of (early) discovery and granting this motion to quash as a result.  Defendant has made the case that this is improper, Plaintiff is forced to explain why *two bites* at the apple are necessary even when it causes prejudicial harm to internet subscribers who may not be infringers at all and suing persons in Florida state court when Plaintiff knows in advance the Defendant lives in California and is not subject to Florida jurisdiction.  This litigation gamesmanship and abuse has to stop.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Courts recognize also that a Defendant has standing to challenge a subpoena directed toward their ISP.  See *Arista Records, LLC vs. Doe 3*, 604 F.3d 110,118 (2nd Cir. 2010).  Moreover, In evaluating whether a plaintiff establishes good cause to learn the identity of a Doe defendant through early discovery, courts examine whether the plaintiff:

> (1) identifies the Doe defendant with sufficient specificity that the court can determine that the defendant is a real person who can be sued in federal court, (2) recounts the steps taken to locate and identify the defendant, **(3) demonstrates that the action can withstand a motion to dismiss**, and (4) shows that the discovery is reasonably likely to lead to identifying information that will permit service of process. *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999) (citations omitted).   "'Where the identity of alleged defendants [is not] known prior to the filing of a complaint the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, **or that the complaint would be dismissed** on other grounds.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).  (emphasis added).

Again, Plaintiff is resorting to filing their state court "bill of discovery" in Florida, precisely because they know they cannot meet the high-bar standards set by *Cobbler*  (set forth in detail below) and cannot allege the "*something more*" to get past a Motion to Dismiss in the 9th Circuit.  If they cannot establish their claim (in this *second* action), beyond more than pure speculation or "plausibility" as they say, if they cannot get past *Cobbler* they have no right to proceed with early discovery, and this proves

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

1   that Rule 11 is being violated.   Plaintiff must show, if it can, how it can overcome this standard and

2   courts have recognized that Cobbler *should not be* limited to motion to dismiss cases (see below).

3

4       ii.      *F.R.C.P 41 Motion to Dismiss*

5

6       Plaintiff's intentional and frivolous delay in filing the state court action, then "cutting and running"

7   once challenged there (in a court where no jurisdiction over Defendant applies, and Plaintiff is aware

8   of this fact given its use of Maxmind software) subjects their current complaint to be dismissed under

9   Rule 41(a) as a failure to follow federal rules (Rule 11) and for unreasonably delaying this action

10  causing harm, prejudice, annoyance, and harassment to a Defendant (internet subscriber).  Again, see

11  **Exhibit "A" P.7** for a copy of Plaintiff's assertions in this regard made pursuant to an OSC which

12  admits Plaintiff knows early on in their investigation where the Plaintiff actually resides, and where

13  they are actually subject to jurisdiction/venue (and yet they file their copyright-related action in

14  Florida state court anyway), and then ***cut and run each and every time they are challenged***.  This

15  intentional and dilatory conduct should not be judicially approved and the Court has the inherent

16  power to dismiss this action with prejudice and force Plaintiff counsel to pay attorney fees as noted

17  below.

18      Under *F.R.C.P Rule 41*:

19      "(b) INVOLUNTARY DISMISSAL; EFFECT. If the plaintiff fails to prosecute **or to comply with these**

20  **rules** or a court order, **a defendant may move to dismiss the action or any claim against it**.

    Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal

21  not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party

    under Rule 19—operates as an adjudication on the merits." (emphasis added).

22

23

24

25                                          14
26

See also *Hearns vs. San Bernardino Police Department* which held that Federal Rule of Civil Procedure 41(b) authorizes a district court to dismiss a complaint with prejudice for failure to comply with **Rule 8(a).** *Nevijel v. North Coast Life Ins. Co.,* 651 F.2d 671, 673 (9th Cir.1981).

Courts have repeatedly upheld the imposition of the sanction of dismissal for failure to comply with **pretrial procedures mandated by local rules and court orders**. See *Buss v. Western Airlines, Inc.,* 738 F.2d 1053 (9th Cir. 1984), cert. denied, U.S. , 105 S.Ct. 968, 83 L.Ed.2d 972 (1985); *Chism v. National Heritage Life Insurance Co.,* 637 F.2d 1328 (9th Cir. 1981); *Transamerica Corporation v. Transamerica Bancgrowth Corp.,* 627 F.2d 963 (9th Cir. 1980).

As such, when violating clearly established rules, and forum-shopping, this action should be dismissed for a violation of Rule 11 (bringing a case it knows cannot overcome the *Cobbler* precedent). There is no minimum "case age" to bring a Rule 41(b) motion. Even if the judge were to believe dismissal was a harsh sanction (The court should also consider whether "dismissal [would] severely penalize plaintiffs . . . for their counsels' bad behavior." Id. at 366; cf. *Al-Torki v. Kaempen,* 78 F.3d 1381, 1383-85 (9th Cir.1996)), Plaintiff should at any rate still be liable for the damages being caused both to the profession, and to my client. This does not look good to law students and the public who are looking in and watching our justice system at work.

Given the emails from Plaintiff counsel (see **Vondran Declaration**), and Plaintiff counsels experience in these matters (and their vast experience as IP lawyers) and their clear understanding of the requirements of the *Cobbler* case, this can only be seen as willful and in bad faith bringing NOT ONE BUT TWO ACTIONS when it knew there was no proper purpose for the first action, and Cobbler standards cannot be met in the second action.

"[t]he sanction of dismissal should be imposed only if the deceptive conduct is **willful, in bad faith**, or relates to the matters in controversy in such a way as to interfere with the rightful decision of the case." *United States v. Nat'l Med. Enters., Inc*., 792 F.2d 906, 912 (9th Cir.1986).

Further legal authority for dismissal with prejudice, (at any proper stage of a case), can be found in sanctions for a "pattern of dilatory conduct." See *Thompson vs. Housing Authority of Los Angeles* and have inherent power to dismiss cases to "**impose order, respect, and decorum" in judicial proceedings**.

See also *U.S. v. Shaffer Equipment Co.*, 11 F.3d 450, 461 (4th Cir. 1993) which held that:

"due to the very nature of the court as an institution, it must and does have an inherent power to impose *order, respect, decorum, silence, and compliance with lawful mandates*. This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers."

*Leon vs. IDX* 464 F.3d 951 (9th Cir. 2006) was another case that addressed sanctions in the interest of justice (65k in sanctions due to bad faith litigation).

Plaintiff's sucker-punch strategy (improperly filing two cases and forcing Defendant to quash both) combined have caused unreasonable delay and evidence a failure to properly prosecute this alleged action against the internet subscriber. *The law presumes prejudice from unreasonable delay*. *In re Eisen*, 31 F.3d at 1453 (quoting *Anderson v. Air West, Inc*., 542 F.2d 522, 524 (9th Cir. 1976)); *Morris v. Morgan Stanley & Co*., 942 F.2d 648, 652 (9th Cir. 1991) (as amended)(presuming from elapsed time that defendants' ability to defend a case has been prejudiced). *As noted above, this can prevent Defendant from accessing exculpatory evidence from the ISP as Plaintiff itself knows and admits (Exhibit "B").*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Under the law, Plaintiff must show some non-frivolous reason for their delay, if they can.  They will tell the Court they are trying to get from 99% accuracy to 100% and "what's wrong with that." But, this should not be taken seriously.  Defendants know they are only trying to build a "*lead bank*" (of internet subscribers to unmask and harass into a "shame settlement" often times demanding 50k – See **Vondran Declaration**) and filing this second action without challenging/defending the quash motion on the first (and challenging subscribers to move to quash once again) only proves it.

A plaintiff may proffer an excuse for delay that, **if "anything but frivolous**," shifts the burden of production to the defendant to show at least some actual prejudice; if it does, the plaintiff must persuade the court that the claims of prejudice are illusory or relatively insignificant in light of his excuse. Id. at 1453 (quoting *Nealey v. Transportacion Maritima Mexicana*, S.A., 662 F.2d 1275, 1281 (9th Cir. 1980)).  See also *Hernandez v. City of El Monte*, 138 F.3d 393, 401 (9th Cir. 1998) (reiterating that the burden of production shifts to the defendant to show at least some actual prejudice **only after the plaintiff has given a non-frivolous excuse for delay**).  Plaintiff has no non-frivolous explanation, and the prejudice to Defendants are clear, presumed, and real in both costs, potential loss of evidence, being asked to file quash motions not once but twice, and the harassment that goes with this as an unmasked internet subscriber subject to this abuse of process.    In this circumstance *prejudice, delay, and excuse all inform the district court's discretion*. Prejudice normally consists of **loss of evidence and memory**, *In re Eisen*, 31 F.3d at 1453; it **may also consist of costs or burdens of litigation.** The *El Monte* case is also telling:

> "Our case law supports the proposition that **a district court has the inherent power sua sponte to dismiss an action for judge-shopping**. In *Oliva v. Sullivan*, 958 F.2d 272 (9th Cir. 1992), for example, we held that "[d]istrict courts have inherent power to control their dockets and may

17

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

impose sanctions, **including dismissal**, in the exercise of that discretion." Id. at 273 (reviewing the district court's sua sponte dismissal for lack of prosecution) (emphasis added).

The Supreme Court has also stated that a "primary aspect" *of every federal court's inherent power is "the ability to fashion an appropriate sanction for conduct which abuses the judicial process*." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991). Judge-shopping clearly constitutes "conduct which abuses the judicial process." The district court's inherent power to impose dismissal or other appropriate sanctions therefore must include the authority to dismiss a case for *judge-shopping* (which is akin to what Plaintiff is doing – *looking for a receptive legal venue to use the Courts as collection arm to their business* regardless of the impact on justice and rule of law.

Thus, the Court is empowered to investigate and scrutinize the unique litigation strategy being employed, and to stop this abuse of process and "cut and run" strategy that forces people to lose respect for the legal system, and to dismiss this case under Rule 41.  Plaintiff's mass filings in Florida are "vexatious" in that they have no intent to pursue any case that is challenged with a motion to quash.

### iii.    *F.R.C.P. 11 Good faith lawsuits*

*F.R.C.P. Rule 11* requires all lawsuits be brought in good faith and without undue delay or for the purposes of harassment of a Defendant.  These lawsuits (which cannot even meet the minimum "*Cobbler* standards" should not be brought first in Florida (raising costs in a "cut and run" strategy), and now in California (where Plaintiff knew all along Defendant resided). This violates Rule 11 and is grounds for sanctions including dismissal and constitutes a willful abuse of process. Rule 11 clearly states:

(b) REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented

party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to *harass, cause unnecessary delay, or needlessly increase the cost of litigation;*

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.  (emphasis added).

This second action should be dismissed and the subpoena quashed with costs to be borne by Plaintiff and their counsel.

iv.     *Cobbler Nevada set the standard for bringing torrent infringement lawsuits in the 9th Circuit and Plaintiff knowingly violates that standard with its pleading.  They should not be allowed to engage in a groundless "fishing expedition" against internet subscribers.*

As noted above, Plaintiff is an habitual filer of John Doe lawsuits against internet subscribers. They have no idea if the subscriber is also an infringer.  This is pure speculation and the current (second action) is not able to meet the Cobbler standards, and is thus open to a motion to dismiss under Rule 12(b).  As noted above, if Plaintiff cannot show it can withstand a motion to dismiss, it should not be permitted to engage in early discovery as they are seeking to do, much less with this "two bite at the apple cut and run" litigation strategy.  As the Court held in *Cobbler*:

"The district court properly dismissed Cobbler Nevada's claims. The direct infringement claim fails because *Gonzales's status as the registered subscriber of an infringing IP address, standing alone, does not create a reasonable inference that he is also the infringer.* Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle. A plaintiff must allege *something more to create a reasonable inference* that a subscriber is also an infringer. Nor can Cobbler Nevada succeed on a contributory infringement theory because, without allegations of intentional encouragement or inducement of infringement, an individual's failure to take affirmative steps to police his internet connection is insufficient to state a claim.

19

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

Here, in this case as in the Florida case involving Defendant, there is nothing more than boilerplate complaints.  Plaintiff is "fishing around" to see if they can unmask an internet subscriber and force them into a "shame settlement" many times seeking $50,000 as a forceful extortion-like demand.  This is probably why the prestigious IP firm of Fox Rothschild (who formerly filed these lawsuits, and where Plaintiff counsel previously worked) no longer associates with these cases.  Certainly, it would not endorse a litigation strategy of this nature and geographical scope (*coast to coast forum shopping and "cut and run"- intentional grounding - to avoid "taking the sack" as they say in football*).  Only the Court can now put a stop to this nonsense.

Legal precedent supports rejecting Plaintiff's request for early discovery and quashing the subpoena and dismissing their case with prejudice.  See *Strike 3 Holdings, LLC v. Doe* (D.N.J. Oct. 24, 2019, No. 18-2674 (JHR/JS)) 2019 U.S.Dist.LEXIS 184513 which held that:

> "Good Cause Does Not Exist for Expedited Discovery Because ***Strike 3 Does Not Plead a Cognizable Claim, i.e., its Complaints are Futile***.  The most fundamental reason the Court denies Strike 3's request for expedited discovery, and why the Court concludes its discovery requests are not reasonable, is that Strike 3 does not plead a cognizable claim in its complaints. It would be anomalous to authorize discovery based on a John Doe complaint that does not pass muster under F*ED*. R. C*IV*. P. *12(b)(6)*, in order to permit Strike 3 to name an individual subscriber who then files a meritorious motion to dismiss. Especially in the John Doe context where a complaint must be carefully scrutinized and a viable defendant is not present to challenge the complaint, ***it is unreasonable to authorize Strike 3 to bootstrap discovery onto a futile complaint***. This is not consistent with the guidepost that the ***Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.***" F*ED*. R. C*IV*. P. 1.  The Court understands that in the present context it is not deciding a <u>motion to dismiss</u>. However, if the Court did not examine the futility of a John Doe complaint it would create too great of an opportunity ***for trickery and gamesmanship.***  Further, in the context of deciding whether expedited discovery should be granted, futility is a relevant consideration in a totality of the circumstance analysis. The Court's sentiment is supported by other opinions. *Wakefield v. Thompson,* 177 F.3d 1160, 1163 (9th Cir. 1999) (discovery to identify a defendant is not appropriate when "the complaint would be dismissed on other grounds."); *Breaking Glass*

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

*Pictures, LLC v. John and Jane Does 118-162, et al.*, No. CV-13-00600-PHX-ROS; 2013 U.S. Dist. LEXIS 106565, 2013 WL 3930474, at *2 (D. Ariz. July 29, 2013) ("Early discovery is not appropriate when the complaint would be dismissed on other grounds."); *Criminal Productions, Inc. v. Doe*, Case No. 16-cv-2352 WQH (JLB), 2016 U.S. Dist. LEXIS 154381, 2016 WL 6581850, at *1 (S.D. Cal. Nov. 7, 2016) (citation and quotation omitted (in order to decide if good cause exists to grant expedited discovery, the plaintiff "should establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss.").

Here, Plaintiff's complaint cannot meet the *Cobbler* standards, and they are just "fishing around" to unmask internet subscribers and invade their privacy protected by the Federal communications and privacy protection act to seek shame settlements.  The complaints they file are boilerplate and conclusory (and in fact false, accusing people that ultimately get dismissed in 30-40% of the cases per their own admission – see **Exhibit "B").**  Moreover, it takes them two different Courts to try to make their cause, raising costs and delaying the action where they know venue/jurisdiction against a Defendant is proper, while *cutting and running* in Florida state court improperly using a "bill of discovery" procedure that even that do not dare to challenge for fear of losing their "lead factory."

In order to survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Clearly, Strike 3 Holdings, through the *Bandlow* and *Mamome* partnership, know they are not filing in Florida enough to make a *plausible* argument for success, and they have not changed anything significant in filing the second federal court action.  Nothing but conclusory unsupported allegations of copyright infringement against an internet subscriber.

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

Plaintiff may argue that *Cobbler* allowed early discovery and declined to grant a motion to quash (only to lose on Motion to Dismiss), but many Courts realize there is no legal mandate to wait for a motion to dismiss if the claim is facially lacking at the outset.

For example, the New Jersey Federal Court held:

*"Cobbler* is not an outlier and its holding has been followed in numerous cases. *Venice PI, LLC v. Huseby*, No. C17-1160 TSZ, 2019 U.S. Dist. LEXIS 62856, 2019 WL 1572894, at *1 (W.D. Wash. Apr. 11, 2019) ("[T]he Ninth Circuit made clear [in *Cobbler*] that a copyright infringement claim based merely on a defendant's status as the subscriber of an IP address associated with infringing activity does not cross the threshold of 'plausibility' that pleadings in federal court must satisfy."); *Malibu Media, LLC v. John Doe Subscriber*, No. 18C450, 2018 U.S. Dist. LEXIS 207655, 2018 WL 6446404, at *3 (N.D.Ill. Dec. 10, 2018) ("This Court agrees with the Ninth Circuit and those courts that have found that a ***plaintiff must allege more than simply the registration of an IP address*** to an individual in order to proceed against that individual for copyright infringement."); *Breaking Glass Pictures, LLC*, 2013 U.S. Dist. LEXIS 106565, 2013 WL 3930474, at *2 (affirming decision ***denying expedited discovery and stating, "the complaint contains no factual allegations setting forth that the subscribers were, in fact, the individuals using the internet connection at the relevant time.*** Also finding plaintiff has not stated plausible claims against the subscribers because although the complaint was consistent with the subscriber's liability for copyright infringement***, the "allegations are also consistent with the subscribers not being liable.***"); *Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160, 164 (D.D.C. 2018) ("Strike 3 could not withstand a 12(b)(6) motion in this case without resorting to far more intensive discovery machinations sufficiently establishing defendant did the infringing[.]"); *PTG Nevada, LLC v. Chan*, No. 16C1621, 2017 U.S. Dist. LEXIS 6276, 2017 WL 168188, at *2 (N.D.Ill. Jan. 17, 2017)(collecting cases)("This Court agrees with those courts that have found that the plaintiff needs to allege more than just the registration of an IP address to an individual in order to proceed against that individual for copyright infringement.*"); In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012)("[I]t is no more likely that the subscriber to an IP address carried out . . . the purported illegal downloading . . . ***than to say an individual who pays the telephone bill made a specific telephone call.***"); *Malibu Media, LLC v. Doe*, No. 15 CIV. 4369(AKH), 2015 WL 4092417 (S.D.N.Y. July 6, 2015) (denying motion for expedited discovery where the plaintiff merely pleaded an IP address was associated with downloading).

The Court is aware of authority that limits Cobbler to the motion to dismiss context. In other words, some decisions hold that Cobbler only applies after the plaintiff has an opportunity to obtain discovery to identify a subscriber. For example, in *Strike 3 Holdings, LLC v. John Doe*, No. 19-CV-00723-JCS, 2019 U.S. Dist. LEXIS 113919, 2019 WL 2996428 (N.D.Cal. July 9,

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

2019), the Court ruled that Cobbler, "does not stand for the proposition that subpoenas may not be used to determine a subscriber's name." 2019 U.S. Dist. LEXIS 113919, [WL] at *3. *However, the Court respectfully disagrees that Cobbler should be given a narrow reading*. First, the Ninth Circuit in **Cobbler did not specifically address a discovery issue so the Court will not read into the decision a ruling that was not decided.** See *Wright v. Spaulding*, 939 F.3d 695, 2019 WL 4493487, at *5 (6th Cir. 2019) ("For a court's conclusion about an issue to be part of its holding . . . the court must have actively applied the conclusion to the case in front of it. . . . [and] it must be clear that the court considered the issue and consciously reached a conclusion about it.") (citation omitted).

Second, for the reasons already stated, *it would be anomalous to permit a plaintiff in a John Doe case to obtain discovery based on a futile boilerplate complaint. Such bootstrapping must be barred in order to protect the integrity of the courts. <u>In this Court's view Cobbler carries just as much weight in the context of a motion for expedited discovery or motion to quash, as it does in the context of a motion to dismiss</u>.* This is certainly not the first and only Opinion denying a motion for expedited discovery because of a deficient pleading.

Third, for the reasons already discussed, in the context of examining the totality of the circumstances to decide if expedited discovery should be granted, it is appropriate to examine in the first instance whether the complaint can withstand a dismissal motion."   (emphasis added).

A recent instructive decision from this District is *Malibu Media v. Joe Park*, No. 17-12107 (JMV)(MF), 2019 U.S. Dist. LEXIS 113434, 2019 WL 2960146 (D.N.J. July 9, 2019). In that case, plaintiff filed a copyright infringement complaint against an alleged John Doe infringer. <u>2019 U.S. Dist. LEXIS 113434, [WL] at *1</u>. The complaint was later amended to specifically name the subscriber who then defaulted. <u>Id.</u> In denying plaintiff's unopposed motion for default judgment, the Court recognized that simply naming an IP subscriber does not make out a copyright claim and does not show that the subscriber is liable. 2019 U.S. Dist. LEXIS 113434, [WL] at *3. The Court agreed with *Cobbler* and stated, "[p]laintiff will have to show something more than merely tying Defendant to an IP address in order to sufficiently establish copyright infringement." 2019 U.S. Dist. LEXIS 113434, [WL] at *6; see also In re BitTorrent Adult Film Copyright Infringement Cases, 296 F.R.D. at 84 *("[T]he assumption*

23

MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41

*that the person who pays for internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time.*"; *Patrick Collins, Inc. v. John Doe 1, 288 F.R.D. 233, (E.D.N.Y. 2012)* (collecting cases) (affirming Magistrate Judge's Report and Recommendation that expedited discovery be denied, and agreeing that the discovery of the subscriber's identify would not establish a reasonable likelihood of the identity of the defendant who could be sued).

The Court is not unsympathetic to Strike 3's argument that without the requested discovery it may not be able to identify alleged copyright infringers. After all, who can argue with the notion that Strike 3 has a right to protect its copyrights. However, the fact that the law lags behind technology is not an ill this Court can cure. The Court will not create a remedy for Strike 3 that does not exist under existing law. *Cobbler*, 901 F.3d at 1146-47 ("While we recognize this obstacle to naming the correct defendant, this complication does not change the plaintiff's burden to plead factual allegations that create a reasonable inference that the defendant is the infringer."); *Malibu Media v. Park*, No. 17-12107 (JMV)(MF), 2019 U.S. Dist. LEXIS 113434, 2019 WL 2960146, at *6 (D.N.J. July 9, 2019) ("The Court recognizes . . . that . . . technology limitations potentially puts a plaintiff in a difficult position in naming the correct defendant, but  such limitations do not relieve a plaintiff of alleging *sufficient facts so that a court can reasonably infer that the named defendant is the actual infringer*."); <u>Strike 3 Holdings, LLC v. Doe, 331 F.R.D. 14, 20 (E.D.N.Y. 2019)</u>(denying request for expedited discovery and stating, "Strike 3's concern about its ability to enforce its copyright against peer-to-peer file sharers is a valid one, but not one that provides good cause to depart from otherwise applicable discovery rules. Also stating, *"[t]he fact that Congress has not acted [to address the problem peer-to-peer file*

1   *sharing technology creates], however, does not mean that courts should take it upon themselves to*

2   *provide more effective enforcement mechanisms to potential plaintiffs.*"); *Hard Drive Productions,*

3   *Inc. v. Does 1-90*, No. C11-03825HRL, 2012 U.S. Dist. LEXIS 45509, 2012 WL 1094653, at *7 (N.D.

4   Cal. Mar. 30, 2012) (denying expedited discovery despite the court's recognition that plaintiff is

5   aggrieved by the apparent infringement and the court's sympathy toward the copyright holder's

6   

7   argument that lawsuits are the only way for it to find and stop infringers).

8   

9   **C.  CONCLUSION**

10      This is a strange case of first impression with never-before-seen litigation "cut and run" tactics

11  filing the same copyright-related case in Florida (state court) and then in California federal court which

12  raises costs and risks losing ISP evidence logs that can exonerate Defendant.  The complaint cannot

13  meet the *Cobbler Nevada* standards (more than plausibility is needed) and this type of improper

14  prejudicial *forum-shopping* must be stopped.  The motion for early discovery (subpoena to ISP) should

15  be quashed as the complaint is subject to a motion to dismiss under *Cobbler Nevada and the case*

16  *should be dismissed with prejudice*.  In the alternative, a protective order preventing Plaintiff from

17  disclosing any personally identifiable information with this Court (except under seal or per Court

18  order) should be entered.

19  RESPECTFULLY SUBMITTED

20  DATED: March 3, 2020

21                                          THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.

22  

23                                    By:   /s/ Steven C. Vondran

24                                          Steven C. Vondran, Esq., Attorney for      Defendant
                                            internet subscriber.

25                                              25

26  MOTION TO QUASH SUBPOENA AND TO DISMISS CASE F.R.C.P. 41