1  Lincoln D. Bandlow, Esq. (CA #170449)
   Lincoln@BandlowLaw.com
2  **Law Offices of Lincoln Bandlow, PC**
   1801 Century Park East, Suite 2400
3  Los Angeles, CA  90067
   Phone: (310) 556-9680
4  Fax: (310) 861-5550

5  Attorney for Plaintiff
   Strike 3 Holdings, LLC
6

7              **UNITED STATES DISTRICT COURT**

8             **NORTHERN DISTRICT OF CALIFORNIA**

9

10  STRIKE 3 HOLDINGS, LLC,                    Case No.: 5:19-cv-08239-VKD

11                     Plaintiff,             **MEMORANDUM OF POINTS AND**
                                              **AUTHORITIES IN OPPOSITION TO**
12  vs.                                       **DEFENDANT'S SECOND MOTION TO**
                                              **QUASH SUBPOENA AND TO DISMISS**
13  JOHN DOE subscriber assigned IP address
    76.102.26.213,                            Honorable Judge Virginia K. DeMarchi
14
                       Defendant.             Hearing:
15                                            Date:  April 14, 2020
                                              Time: 10:00 a.m.
16                                            Place: [Telephonic Hearing, If Any, Per
                                              Court Order]
17

18

19

20

21

22

23

24

25

26

27

28                                    1

---

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................. 1

II.  FACTS .............................................................................................................. 1

III. LEGAL STANDARD ....................................................................................... 4

IV. ARGUMENT .................................................................................................... 6

    A. Doe's Motion Does Not Provide Grounds to Quash or Modify a Subpoena ................... 6

    B. Doe Has Not Demonstrated Why This Claim Should be Dismissed ............................... 9

        1. Strike 3 Complaint Satisfies Rule 8(a) ........................................................ 9

            a. Cobbler Does Not Support Dismissal of this Action ............................. 9

            b. Doe's Reliance on the N.J. Opinion is Misplaced ............................... 12

            c. Strike 3 Has Presented a Cognizable Claim for Copyright Infringement ........... 16

        2. Any Delays in Unmasking the Infringer Are the Result of Doe's Contradicting Arguments and Dilatory Conduct ........................................ 20

            a. Doe Failed to Comply with the Strict Procedural Safeguards of Rule 11(c)(2) .. 20

            b. There Is No Substantive Violation of Rule 11(b) ................................. 21

V.  CONCLUSION ............................................................................................... 24

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*al-Kidd v. Ashcroft*,
   580 F.3d 949 (9th Cir. 2009) ............................................................. 19
*Applied Underwriters, Inc. v. Lichtenegger*,
   913 F.3d 884 (9th Cir. 2019) ............................................................... 5
*Ashby v. White*,
   2 Raym. Ld. 938 (H.L. 1703) ............................................................ 16
*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............... 14, 17
*Barber v. Miller*,
   146 F.3d 707 (9th Cir. 1998) ............................................................. 20
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......... 14, 17, 18
*Bleiberg Entm't, LLC v. John & Jane Does 1-47*,
   No. CV 13-00595 (PHX)(GMS), 2013 WL 3786641 (D. Ariz. July 19, 2013) ..... 19
*Botsford v. Blue Cross & Blue Shield of Montana, Inc.*,
   314 F.3d 390 (9th Cir. 2002) ............................................................. 23
*Breaking Glass Pictures, LLC v. John Does 118-162*,
   No. 13-600, 2013 WL 3930474 (D. Ariz. July 29, 2013) ...................... 15
*Buster v. Greisen*,
   104 F.3d 1186 (9th Cir. 1997) ........................................................... 22
*Canal Street Films Inc. v. Comcast*,
   05-2013-CA-40202 (18th Jud. Cir. May 17, 2013) ............................... 4
*Carr v. Bombardier Aerospace Corp.*,
   No. 10-60917, 2010 WL 2220336 (S.D. Fla. June 3, 2010) ................... 3
*Cobbler Nevada, LLC v. Gonzales*,
   901 F.3d 1142 (9th Cir. 2018) ..................................................... passim
*Columbia Ins. Co. v. seescandy.com*,
   185 F.R.D. 573 (N.D. Cal. 1999) ....................................................... 13
*Conservation Force v. Salazar*,
   646 F.3d 1240 (9th Cir. 2011) ........................................................... 17
*Crocs, Inc. v. Effervescent, Inc.*,
   No. CV 06-00605 (PAB) (KMT), 2017 WL 3888455 (D. Colo. Jan. 30, 2017) ..... 5
*CSC Holdings, Inc. v. Redisi*,
   309 F.3d 988 (7th Cir. 2002) ............................................................... 6
*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) ............................................................. 23

ii

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004) ........................................................................... 5

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) ..................................... 18

*Foreign Imported Productions and Pub., Inc. v. Grupo Indus. Hotelero, S.A.*,
2008 WL 4724495 (S.D. Fla. Oct. 24, 2008) ........................................................ 3

*G.C. & K.B. Investments, Inc. v. Wilson*,
326 F.3d 1096 (9th Cir. 2003) ......................................................................... 21

*Garrett v. Wexford Health*,
938 F.3d 69 (3d Cir. 2019) ............................................................................. 16

*Glacier Films (USA), Inc. v. Turchin*,
896 F.3d 1033 (9th Cir. 2018) ............................................................... 12, 14, 15

*Gonzalez v. Whitney Merlynn Peterson*,
No. CV 17-0034, 2017 WL 2633491 (D. Mont. June 16, 2017).............................. 13

*GRiD Sys. Corp. v. John Fluke Mfg. Co.*,
41 F.3d 1318 (9th Cir. 1994) ........................................................................... 22

*Heilman v. Wasko*,
No. CV 12-01966 (JAM)(AC), 2015 WL 1498885 (E.D. Cal. Mar. 31, 2015) ....................... 5

*Henderson v. Duncan*,
779 F.2d 1421 (9th Cir. 1986) ........................................................................... 6

*Holgate v. Baldwin*,
425 F.3d 671 (9th Cir. 2005) ........................................................................... 20

*Hurd v. Ralphs Grocery Co.*,
824 F.2d 806 (9th Cir. 1987) ........................................................................... 22

*In re Does*,
337 S.W.3d 862, 864 (Tex. 2011) ....................................................................... 3

*In re Google Litig.*,
No. CV 8-03172 (RMW)(PSG), 2011 WL 6113000 (N.D. Cal. Dec. 7, 2011) ....................... 4

*In re Malibu Media Copyright Infringement Litig.*,
No. CV 15-04170 (WHA), 2016 WL 926906 ...................................................... 19

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006) ........................................................................... 5

*Internet Sols. Corp. v. Marshall*,
39 So. 3d 1201 (Fla. 2010) ............................................................................... 4

*Jones v. Bock*,
549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007)......................................... 9

*Kirschner v. Klemons*,
No. CV 99-4828 (RCC), 2005 WL 1214330 (S.D.N.Y. May 19, 2005)................................ 5

*Malibu Media, LLC v. Doe*,
18-450, 2018 WL 6446404 (N.D. Ill. Dec. 10, 2018) ........................................... 15

iii

*Malibu Media, LLC v. Doe*,
  No. 18-5792, 2019 WL 7876473 (N.D. Ill. Jan. 2, 2019)........................................................ 12

*Malibu Media, LLC v. Doe*,
  No. CV 16-01006 (WHA), 2016 WL 3383830 (N.D. Cal. June 20, 2016) ............................. 5

*Malibu Media, LLC v. Doe*,
  No. CV 16-1739, 2017 WL 1050573 (D.N.J. Mar. 20, 2017)................................................ 19

*Malibu Media, LLC*,
  No. CV 13-365 (PWG), 2014 WL 7188822 (D. Md. Dec. 16, 2014) .............................. 15, 18

*Marbury v. Madison*,
  5 U.S. 137 (1803)................................................................................................................. 15

*ME2 Prods., Inc. v. Kariuki*,
  No. 17-1077, 2018 WL 2088306 (W.D. Wash. May 4, 2018) .............................................. 18

*Mesia v. Fla. Agr. & Mech. Univ. Sch. of Law*,
  605 F. Supp. 2d 1230 (M.D. Fla. 2009)................................................................................. 3

*Metro-Goldwyn-Mayer Studies Inc. v. Grokster, Ltd.*,
  545 U.S. 913, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005)........................................................ 16

*Mount Hope Church v. Bash Back!*,
  705 F.3d 418 (9th Cir. 2012) ................................................................................................. 8

*Nevijel v. N. Coast Life Ins. Co.*,
  651 F.2d 671, 674 (9th Cir. 1981) ......................................................................................... 9

*Omstead v. Dell, Inc.*,
  594 F.3d 1081 (9th Cir. 2010) ............................................................................................... 6

*Pae v. Select Portfolio Servicing, Inc.*,
  No. CV 15-1132 (BLF), 2015 WL 12915113 (N.D. Cal. July 10, 2015)............................ 17

*Patrick Collins, Inc. v. Does*,
  No. CV 12-574-J-25JRK, 2012 WL 12903097 (M.D. Fla. Dec. 6, 2012) ........................... 8

*Pearson Educ., Inc. v. Hotfile Corp.*,
  No. CV 14-20200, 2014 WL 5494680 (S.D. Fla. Oct. 30, 2014)........................................... 3

*PTG Nevada, LLC v. Chan*,
  No. 16-1621, 2017 WL 168188 (N.D. Ill. Jan. 17, 2017)................................................... 15

*Radcliffe v. Rainbow Const. Co.*,
  254 F.3d 772 (9th Cir. 2001) ............................................................................................... 21

*Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1*,
  824 F.3d 1161 (9th Cir. 2016) ............................................................................................. 23

*San Diego Cty. Credit Union v. Citizens Equity First Credit Union*,
  360 F. Supp. 3d 1039 (S.D. Cal. 2019).................................................................................. 18

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
  531 U.S. 497, 504, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001)................................................ 23

*Smith v. Cook*,
  No. CV 17-00961 (AJB)(WVG), 2018 WL 1185221 (S.D. Cal. Mar. 7, 2018) .................... 22

iv

*Smith v. Trans-Siberian Orchestra*,
  728 F. Supp. 2d 1315 (M.D. Fla. 2010)........................................................................ 3

*Sony BMG Music Entm't v. Tenenbaum*,
  660 F.3d 487 (1st Cir. 2011) ................................................................................... 16

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ................................................................................. 11

*Strike 3 Holdings, LLC v. Doe*,
  331 F.R.D. 14 (E.D.N.Y. 2019) ............................................................................... 13

*Strike 3 Holdings, LLC v. Doe*,
  337 F. Supp. 3d 246 (W.D.N.Y. 2018) ....................................................................... 7

*Strike 3 Holdings, LLC v. Doe*,
  No. 17-1680, 2017 WL 5001474 (D. Conn. Nov. 1, 2017) ....................................... 13

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-02019 (N.D. Cal. Sep. 14, 2018) .................................................................... 7

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12609, ECF No. 16 at p.6-7 (D.N.J. June 27, 2019) ...................................... 8

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-14138, ECF No. 15 at 1 (D.N.J. June 27, 2019) ........................................... 13

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-1490, 2019 WL 1529339 (W.D.N.Y. Apr. 8, 2019)................................... 7, 18

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-1762 (E.D. Pa. Oct. 2, 2018) .......................................................................... 7

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-2637, 2019 WL 935390 (E.D. Cal. Feb. 26, 2019) ....................................... 14

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-5223, 2019 WL 1429331 (E.D. Pa. Mar. 29, 2019) ........................................ 7

*Strike 3 Holdings, LLC v. Doe*,
  No. CV 17-9659 (VEC), 2018 WL 2371730 (S.D.N.Y. May 23, 2018)................................ 19

*Strike 3 Holdings, LLC v. Doe*,
  No. CV 18-01874 (GLR), ECF No. 17 (D. Md. Oct. 26, 2018)............................................ 16

*Strike 3 Holdings, LLC v. Doe*,
  No. CV 18-02637 (MCE)(CKD), 2019 WL 935390 (E.D. Cal. Feb. 26, 2019) .............. 10, 12

*Strike 3 Holdings, LLC v. Doe*,
  No. CV 18-04993 (KAW), 2019 WL 468816 (N.D. Cal. Feb. 6, 2019) ............................... 10

*Strike 3 Holdings, LLC v. Doe*,
  No. CV 18-06488, ECF No. 24 (N.D. Ill. Apr. 4, 2019) .................................................... 16

*Strike 3 Holdings, LLC v. Doe*,
  No. CV 18-06938 (WHO), 2019 WL 402358 (N.D. Cal. Jan. 31, 2019)............................ 10

*Strike 3 Holdings, LLC v. Doe*,
  No. CV 18-12585 (NLH/JS), 2019 WL 5446239 (D.N.J. Oct. 24, 2019)....................... 12, 14

v

*Strike 3 Holdings, LLC v. Doe*,
No. CV 18-14060, ECF No. 14 (E.D. Mich. May 31, 2019)................................................... 16

*Strike 3 Holdings, LLC v. Doe*,
No. CV 18-16564, ECF No. 9-3 (D.N.J. Oct. 31, 2019) ....................................................... 3

*Strike 3 Holdings, LLC v. Doe*,
No. CV 18-16593 (MAS), 2019 WL 4745360 (D.N.J. Sept. 30, 2019)............... 10, 15, 16, 17

*Strike 3 Holdings, LLC v. Doe*,
No. CV 18-2648 (VEC), 2019 WL 78987 (S.D.N.Y. Jan. 2, 2019)............................. 7, 10, 19

*Strike 3 Holdings, LLC v. Doe*,
No. CV 18-2720 (GPC)(WVG), 2018 WL 6649504 (S.D. Cal. Dec. 18, 2018).................... 10

*Strike 3 Holdings, LLC v. Doe*,
No. CV 18-4988 (LB), 2018 WL 4587185 (N.D. Cal. Sept. 24, 2018) ................................ 19

*Strike 3 Holdings, LLC v. Doe*,
No. CV 19-00160 (EMC), 2019 WL 591459 (N.D. Cal. Feb. 13, 2019) .............................. 10

*Strike 3 Holdings, LLC v. Doe*,
No. CV 19-00167 (KAW), 2019 WL 1865919 (N.D. Cal. Apr. 25, 2019)............... 10, 12, 18

*Strike 3 Holdings, LLC v. Doe*,
No. CV 19-00232 (EMC), 2019 WL 591460 (N.D. Cal. Feb. 13, 2019) .............................. 10

*Strike 3 Holdings, LLC v. Doe*,
No. CV 19-00723 (JCS), 2019 WL 2996428 (N.D. Cal. July 9, 2019).................................. 10

*Strike 3 Holdings, LLC v. Doe*,
No. CV 19-140 (TJH)(SPx), 2019 WL 6894526 (C.D. Cal. July 16, 2019) .......................... 8

*Strike 3 Holdings, LLC v. Doe*,
No. CV 19-396 (GJH), 2020 WL 917090 (D. Md. Feb. 25, 2020) ........................................ 18

*Strike 3 Holdings, LLC v. Doe*,
No. CV 19-5818 (AT)(JLC), 2019 WL 5459693 (S.D.N.Y. Oct. 9, 2019)........................... 16

*Strike 3 Holdings, LLC v. Doe*,
No. CV 19-73 (WQH)(WVG), 2019 WL 777416 (S.D. Cal. Feb. 21, 2019)........................ 10

*Strike 3 Holdings, LLC v. John Doe*,
No. 18-1856 (D. Nev. Oct. 17, 2018) ................................................................................... 15

*Strike 3 Holdings*,
No. CV 18-774 (DWF/DTS), 2018 WL 4210202 ................................................................. 6

*Sunbeam Television Corp. v. Columbia Broadcasting System, Inc.*,
694 F.Supp. 889 (S.D. Fla. 1988) ........................................................................................... 3

*Texas & P. Ry. Co. v. Rigsby*,
241 U.S. 33 (1916).................................................................................................................. 15

*Third Degree Films, Inc. v. Does 1-178*,
2012 WL 12925674 (N.D. Cal. Dec. 6, 2012)......................................................................... 8

*Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.*,
834 F.2d 833 (9th Cir. 1987) ................................................................................................. 20

vi

*Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*,
    596 F.3d 1313 (11th Cir. 2010) ........................................................................ 23

*Venice PI, LLC v. Huseby*,
    No. 17-1160, 2019 WL 1572894 (W.D. Wash. Apr. 11, 2019) ........................ 15

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................................ 17

*W. Coast Prods., Inc. v. Does 1-1,434*,
    2012 WL 10132002 (D.D.C. Aug. 6, 2012) ..................................................... 11

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
    556 F.3d 815 (9th Cir. 2009) .......................................................................... 20

*Youngblood v. 5 Unknown Cim Corr. Officers*,
    536 F. App'x 758 (9th Cir. 2013) ................................................................... 12

*Yourish v. California Amplifier*,
    191 F.3d 983, 986 (9th Cir. 1999) .................................................................... 5

**Statutes**

47 U.S.C. § 551(c)(2)(B) .......................................................................................... 6

**Other Authorities**

Bacon, Francis (1620), *Novum Organum* .............................................................. 10

**Rules**

Fed. R. Civ. P. 11(b)(1) .......................................................................................... 21
Fed. R. Civ. P. 11(b)(2) .......................................................................................... 21
Fed. R. Civ. P. 11(c)(1) .......................................................................................... 20
Fed. R. Civ. P. 11(c)(1)(A) ..................................................................................... 20
Fed. R. Civ. P. 11(c)(2) .......................................................................................... 20
Fed. R. Civ. P. 12(b)(6) ...................................................................................... 9, 16
Fed. R. Civ. P. 26(d) ................................................................................................ 7
Fed. R. Civ. P. 41(b) .............................................................................................. 19
Fed. R. Civ. P. 45(d)(3)(A) ...................................................................................... 5
Fed. R. Civ. P. 8(a)(2) ............................................................................................ 16

vii

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Plaintiff, Strike 3 Holdings, LLC ("Plaintiff" or "Strike 3") hereby respectfully submits this Memorandum of Points and Authorities in Opposition to the Motion to Quash Subpoena and to Dismiss ("Motion") filed by Defendant, John Doe subscriber assigned IP address 76.102.26.213 ("Doe").

## I.   <u>INTRODUCTION</u>

Doe's Motion is long on buzz words – variously *italicized*, **bolded**, CAPITALIZED, and/or repeated *ad nauseum* in "scare quotes" – but short on substance and wrong on both the facts and the law.  Indeed, the majority of the Motion is a gripe that, in an effort to reduce the burden that fighting the rampant infringements engaged in by Doe and thousands of others has caused to federal courts, Plaintiff first sought discovery in Florida state court – where Doe is subject to personal jurisdiction – before voluntarily agreeing to pursue its claims in this court based on Doe's objection to the Florida action.  But nothing about the Florida action is actually before the Court here – the issue here is whether Doe has met Doe's "heavy burden" to establish one of the grounds enumerated in Federal Rule of Civil Procedure 45 so as to quash the subpoena that the Court has already authorized.

Doe has plainly failed to meet this burden.  As the Court has already found, Plaintiff made an adequate showing of good cause to conduct early limited discovery in the form of a subpoena to Doe's Internet service provider ("ISP"), and Doe has failed to show that any ground exists to quash that subpoena.  Similarly, Strike 3's Complaint passes Rule 8(a)'s liberal hurdle, and neither that Complaint nor its motion for discovery violate Rule 11(b). Accordingly, Defendant has also failed to show why this case should be dismissed.  The Court should deny Doe's attempt to delay this case from proceeding.

## II.   <u>FACTS</u>

Strike 3 owns the intellectual property in award-winning adult motion pictures.  *See* Declaration of David Williamson, ¶ 13 [ECF No. 8-1 (Ex. A)].  Strike 3's philosophy is to hold itself above the rest:  higher budgets, higher compensation for its actors and actresses, and

1   higher-end productions. *Id.* at ¶¶ 15–16.  Despite its success, Strike 3 does not rest on its back-

2   catalogue and is continually seeking out new opportunities and ventures to provide subscribers

3   with a better experience. *Id.* at ¶¶ 17, 19.  Strike 3's business has "raised the bar" for the rest of

4   the industry, "leading more adult studios to invest in better content, higher pay for performers,

5   and to treat each performer like an artist." *Id.* at ¶ 25.

6        As a result of its higher production and talent costs, Strike 3 is sensitive to the

7   substantial loss of revenue that mass copyright infringement threatens.  Despite attempting to

8   mitigate the infringement outside the courts, *see id.* at ¶ 31 (sending thousands of DMCA

9   takedowns to infringing websites), lawsuits like this have become an option of last resort. *Id.* at

10   ¶ 32.  Plaintiff understands the delicate nature of these suits, and for this and other reasons, has

11   put in place protocols, including inviting this Court to implement a protective order. *See* [ECF

12   No. 8, at 20].

13        Doe is accused of downloading, distributing, and hence infringing numerous different

14   works of Plaintiff across the BitTorrent network. *See generally* [ECF Nos. 1 and 1-1] (listing

15   the copyrights-in-suit).  BitTorrent allows users to operate anonymously, revealing only the IP

16   address they are using, as well as a wealth of information concerning their internet activity.  For

17   example, Plaintiff's investigators are able to geo-locate the user's approximate location, the

18   BitTorrent client (program) they are using to download and share works, and the works that are

19   being shared (recorded down to the hour, minute and second when those works are being

20   shared) – all of which enables a plaintiff to attempt to connect the subscriber (or someone with

21   consistent access to the IP address) as the infringer, using publicly available information, after it

22   learns the identity of the subscriber.[1]

23        To protect some amount of anonymity, Congress has prohibited ISPs from disclosing

24   subscriber information absent a court order. *See Cable Communications Policy Act of 1984*

25

26        [1] Since BitTorrent is anonymous, it is impossible to initially determine whether there are

27   additional users of the IP address other than the subscriber.  Thus, at the time Strike 3 files its complaint, there is only one individual who, it can be stated with certainty, exists and is using the IP address:  the subscriber.

28                                         2

("CCPA"), 47 U.S.C. § 551 *et seq.*  That anonymity can be pierced to address BitTorrent piracy, but a plaintiff seeking to address that piracy must first file a lawsuit against the subscriber as a "John Doe" entity to obtain such an order permitting the plaintiff to serve the required subpoena.  Historically, Plaintiff sought such an order by filing its John Doe complaint in federal court and seeking leave to conduct limited early discovery before a Rule 16 conference, pursuant to Rule 26(f).  Some courts, however, have expressed concern with the volume of litigation that is required to fight this mass infringement, which has unfortunately increased as Strike 3's motion pictures have grown in volume and in popularity, leading to more infringement of its copyrights.  One court, in the course of denying Strike 3's request to conduct early discovery – a decision relied upon heavily by Doe (while failing to inform this Court that it is currently on appeal) suggested that Strike 3 explore state court mechanisms for obtaining this necessary information.  *See e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. CV 18-16564, ECF No. 9-3, at *117 (D.N.J. Oct. 31, 2019) (hearing transcript).   Since the CCPA imposes no requirement that a subpoena be authorized by a *federal* court, *see e.g., In re Does*, 337 S.W.3d 862, 864 (Tex. 2011), Plaintiff began filing actions in Florida seeking relief in the form of a pure bill of discovery ("bill of discovery" or "pure bill"), which is an equitable cause of action that permits discovery independent of the prospective claim for relief.[2]

Since many Doe parties are not physically located in Florida – despite being subject to specific personal jurisdiction there[3] – Strike 3 has a policy that, if a Doe lodges any objection to

---

[2] "The purpose of a pure bill is to identify 'the proper parties against whom and the proper legal theories under which to subsequently sue for relief[.]'"  *Mesia v. Fla. Agr. & Mech. Univ. Sch. of Law*, 605 F. Supp. 2d 1230, 1232 (M.D. Fla. 2009) (quoting *Sunbeam Television Corp. v. Columbia Broadcasting System, Inc.*, 694 F.Supp. 889 (S.D. Fla. 1988)).  Importantly, it is "separate and distinct from any subsequent action for relief based on the discovery . . . ." *Carr v. Bombardier Aerospace Corp.*, No. 10-60917, 2010 WL 2220336, at *1 (S.D. Fla. June 3, 2010).  "Upon answering the [b]ill [of discovery], the proceeding terminates.  A subsequent suit for relief is an entirely separate proceeding."  *Sunbeam*, 694 F. Supp. at 895.

[3] Florida is an appropriate forum for these bill of discovery lawsuits since (1) Strike 3's forensic servers – which detect and record infringement – are located in Florida, and (2) infringers, like Doe, are also subject to specific personal jurisdiction in Florida – a fact Doe makes no attempt to refute other than offering empty rhetoric in their briefing.  *See Pearson Educ., Inc. v. Hotfile Corp.*, No. CV 14-20200, 2014 WL 5494680, at *3 (S.D. Fla. Oct. 30, 2014); *Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1322 (M.D. Fla. 2010); *Foreign Imported Productions and Pub., Inc. v. Grupo Indus. Hotelero, S.A.*, 2008 WL

3

1  this discovery,  Plaintiff will remove them from the Florida action and pursue this discovery

2  within the federal jurisdiction of the Doe's domicile.  Thus, far from Doe's repeated claim that

3  Strike 3 engages in a "cut-and-run" tactic, it is in fact only a courtesy, allowing Doe to

4  challenge the discovery request to their ISP in their preferred jurisdiction.  Ironically, it is Doe

5  who is engaging in forum shopping (with Strike 3's blessing) by objecting to the valid

6  discovery being sought in Florida.  That is what occurred in this case: Doe objected to the

7  request for this discovery in Florida, and – although it would have been proper to proceed there

8  – Strike 3 agreed to litigate its claim in the Doe's chosen forum.

9         After Doe objected to the Florida discovery,[4] Strike 3 filed its Complaint in this Court

10  and sought leave to serve an early subpoena on Doe's ISP – not on Doe – for the limited

11  purpose of identifying and serving Doe (while maintaining Doe's anonymity) in accordance

12  with the Federal Rules of Civil Procedure. [ECF No. 9].  This Court granted Plaintiff's motion

13  on January 22, 2020 [ECF No. 10], and after Plaintiff served its subpoena on Doe's ISP, Doe

14  filed the instant Motion [ECF No. 13], which makes up the present controversy.

15  **III.   LEGAL STANDARD**

16         Rule 45 "authorizes issuance of a subpoena to command a nonparty to produce

17  designated documents, electronically stored information, or tangible things in its possession,

18  custody or control."  *In re Google Litig.*, No. CV 8-03172 (RMW)(PSG), 2011 WL 6113000, at

19  *1 (N.D. Cal. Dec. 7, 2011) (citation omitted).  The Rule further outlines a limited set of

20  "circumstances in which a court is required to grant a motion to quash or modify a subpoena."

21

22  4724495 at *5 (S.D. Fla. Oct. 24, 2008); *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1214
   (Fla. 2010).  Indeed, in a similar action, Comcast challenged jurisdiction under similar grounds

23  and lost, and the case was upheld by the Florida Fifth District Court of Appeals.  *See Canal
   Street Films Inc. v. Comcast,* 05-2013-CA-40202 (18th Jud. Cir. May 17, 2013).  Importantly,

24  here, Comcast has not objected to complying with the bill of discovery subpoena.

25         [4] Doe filed a motion to quash in Florida, but never filed a notice of hearing on that
   motion, which is required under Florida's procedure to have a motion heard.  In fact, no

26  opposing counsel, in any of Strike 3's bill of discovery cases, has ever noticed a hearing, likely
   because they know their arguments are flawed and filed only to stall litigation, and because

27  Strike 3 reasonably agrees to always permit doe parties to defend in the forum of their choice.

28                                        4

1    *Heilman v. Wasko*, No. CV 12-01966 (JAM)(AC), 2015 WL 1498885, at *8–9 (E.D. Cal. Mar.

2    31, 2015).  These circumstances arise when the subpoena "(i) fails to allow a reasonable time to

3    comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

4    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver

5    applies; or (iv) subjects a person to undue burden."  *Malibu Media, LLC v. Doe*, No. CV 16-

6    01006 (WHA), 2016 WL 3383830, at *2 (N.D. Cal. June 20, 2016) (quoting Fed. R. Civ. P.

7    45(d)(3)(A)).  Additionally, a subpoena may be quashed or modified if it requires "(i) disclosing

8    a trade secret or other confidential . . . information;" or (ii) discloses certain expert opinions.  *Id.*

9    "No other grounds are listed."  *Crocs, Inc. v. Effervescent, Inc.*, No. CV 06-00605 (PAB)

10   (KMT), 2017 WL 3888455, at *2 (D. Colo. Jan. 30, 2017) (collecting cases).  "[T]he party

11   seeking to quash a subpoena bears a heavy burden of proof."  *Kirschner v. Klemons*, No. CV

12   99-4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (citation omitted).

13       Doe also asserts that the action can be dismissed pursuant to Fed. R. Civ. Proc. 41(b)

14   based on Plaintiff's supposed failure to comply with the Federal Rules.  "[A] Rule 41(b)

15   dismissal is deemed a sanction for disobedience," *Edwards v. Marin Park, Inc.*, 356 F.3d 1058,

16   1065 (9th Cir. 2004), that empowers courts to "dismiss" a claim "[i]f the plaintiff fails . . . to

17   comply with [the Federal Rules.]"  "Dismissal is a harsh penalty and is to be imposed only in

18   extreme circumstances."  *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217,

19   1226 (9th Cir. 2006) (citation and internal quotations omitted).  The necessary implication of

20   this Rule is that the Court must first determine whether the Federal Rules were violated.  *Cf.*

21   *Yourish v. California Amplifier*, 191 F.3d 983 (9th Cir. 1999) (examining first whether a minute

22   order qualified under Rule 41(b) and then whether that order was disobeyed); *Applied*

23   *Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 892 (9th Cir. 2019).  Absent such a violation,

24   there is nothing for Rule 41(b) to sanction.[5]

25       ───────────────

26   [5] If the Court were to find a violation of the Federal Rules or a court order – and there
     has been no such violation – the court would then have to weigh the so-called *Ferdik* factors,
27   which consist of "(1) the public's interest in expeditious resolution of litigation; (2) the court's
     need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy
     favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."

28                                              5

IV.   **ARGUMENT**

   A.   **Doe's Motion Does Not Provide Grounds to Quash or Modify a Subpoena**

   Doe's only argument for quashing the subpoena to their ISP that was authorized by this Court is that the subpoena purportedly "violate[s] Defendant's right of privacy under the Federal Cable Privacy Act by unmasking their identity and seeking their name and address for the sole purpose of obtaining their name and then harassing them in pursuit of a '*shame settlement*' notwithstanding the fact they have no actual evidence . . . ."  ECF No. 16, at 10 (emphasis original).  This argument is baseless.

   First, nothing presented by Doe is grounds to quash a subpoena under Rule 45(d).  Doe has merely identified the statutory source of Doe's privacy interest, the CCPA, which required Plaintiff to file an application to serve the subpoena.  That statute alone, however, does not render Doe's identifying information absolutely privileged or undiscoverable.  *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (citing 47 U.S.C. § 551(c)(2)(B)) ("There is no privilege or restriction on releasing customer records to a nongovernmental entity pursuant to a court order").  It merely prevents a party like Strike 3 from directly petitioning the ISP to disclose the subscriber's information without court approval, and instead requires Plaintiff to apply to the Court for an order authorizing the ISP to release that information.  *See e.g.*, *Strike 3 Holdings*, No. CV 18-774 (DWF/DTS), 2018 WL 4210202 at *2.  This Court  has already weighed the proportionality of Strike 3's request with Doe's interest, and after so doing determined that limited, early discovery was appropriate.  *See* [ECF No. 9].  Additionally, the Court entered a protective order along with its order authorizing release of Doe's information, further accounting for and protecting Doe's privacy interest.  *Id.* at ¶ 4 ("Strike 3 shall not publicly disclose that information absent consent of the subscriber or leave of court.").

   This fact also vitiates Doe's baseless and false insinuation that Strike 3's goal is to obtain a "shame settlement."  Again, Plaintiff's purported "motivation" is not grounds under

---

*Omstead v. Dell, Inc.*, 594 F.3d 1081, 1084 (9th Cir. 2010) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)).

6

Rule 45(d) to quash or modify a subpoena.  It is more appropriately considered under the

Court's power to enter protective orders under Fed. R. Civ. P. 26(d) (enabling the Court to

protect parties from "annoyance" and "embarrassment").  Strike 3 has no ill-motives when it

petitions for discovery and always invites the Court to enter protective orders.  [ECF No. 8, at

20].  That is precisely what the Court did here.  *See Strike 3 Holdings, LLC v. Doe*, No. CV 18-

2648 (VEC), 2019 WL 78987, at *4 (S.D.N.Y. Jan. 2, 2019) (denying motion to quash and

noting that the "protective order has fairly balanced Plaintiff['s] and Doe's interests").  Strike

3's general goal is to deter mass piracy of its motion pictures and redirect infringers into the

readily accessible and legal market for its works, and specifically to deter Doe from continuing

to infringe on Strike 3's works, to destroy the infringing copies of its works that Doe has and is

distributing on BitTorrent, and to obtain compensation for the infringement that has occurred.

Strike 3 does not seek to embarrass or harass anyone and has gone to great measures to ensure

protocols are in place to assuage those concerns.[6]  Moreover, Defendant is represented by

counsel who can adequately represent Defendant in settlement discussions.  *Patrick Collins,*

---

[6] Court around the country have recognized that claims to the contrary are without merit. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-12609, ECF No. 16 at *6 (D.N.J. June 27, 2019) ("Defendant contends that Strike 3 uses an abusive business model that the Court should not endorse. On the record before the Court, however, the undersigned cannot find that Strike 3's practices constitute such an abuse."); *Strike 3 Holdings, LLC v. Doe*, No. 18-1490, 2019 WL 1529339 at *5 (W.D.N.Y. Apr. 8, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-5223, 2019 WL 1429331, at *2 (E.D. Pa. Mar. 29, 2019) ("There is nothing before us at this time to suggest that Strike 3 is doing anything other than taking the proper steps to enforce what it deems to be valid copyrights."); *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 257 (W.D.N.Y. 2018) (denying motion to quash and finding "there is no evidence to support Defendant's conclusory claims that Plaintiff is engaging in copyright troll litigation tactics in the instant lawsuit" because "Plaintiff is ready and willing to litigate the cases it files . . . [and] there is no evidence that Plaintiff has engaged in any of the abusive practices used by similar plaintiff's, such as exploiting Defendant's identifying information as leverage for settlement, or filing one lawsuit against numerous John Does as a way to circumvent filing fees[.]") (citations omitted); *Strike 3 Holdings, LLC v. Doe*, No. 18-1762, ECF No. 12 at *1 n.1 (E.D. Pa. Oct. 2, 2018) ("Doe's unsupported assertion that Strike would use Doe's personal information to coerce settlement is also insufficient to quash Strike 3's subpoena as an undue burden."); *Strike 3 Holdings, LLC v. Doe*, No. 18-02019, ECF No. 29 at *5-6 (N.D. Cal. Sep. 14, 2018) (denying motion to quash and noting that Strike 3's "conduct in this case and the dozens of similar cases it has filed in this District suggest that the unsavory tactics of earlier copyright litigants discussed in the cases cited by Defendant are unlikely to come to fruition here. . . . Thus, in contrast to parties that might simply file lawsuits to encourage defendants to settle, Plaintiff appears to be following through with litigation.").

7

1   *Inc. v. Does*, No. CV 12-574-J-25JRK, 2012 WL 12903097, at *4 (M.D. Fla. Dec. 6, 2012)

2   (finding this "concern is especially minimized" where the Doe party is "represented by

3   counsel").

4          Finally, Doe suggests, but does not argue, that Strike 3's subpoena imposes an undue

5   burden on Doe.  This also misapprehends the nature of this action.  Doe is not the party

6   burdened with production; the ISP is.

> Although Doe has standing to challenge the subpoena, he or she does not face an
> undue burden with respect to the subpoena's request. A party cannot face undue
> burden if it is not the party responding to the subpoena. *See Third Degree Films,
> Inc. v. Does 1-178*, 2012 WL 12925674, at *2 (N.D. Cal. Dec. 6, 2012)
> ("[d]efendant is not faced with an undue burden because the subpoena is directed
> at the ISP and not the [d]efendant) (citations omitted). The ISP is directed to
> produce the information, so it is "its prerogative to claim an undue burden." *Id.*
> (citations omitted); *see also Mount Hope Church v. Bash Back!*, 705 F.3d 418, 428
> (9th Cir. 2012) ("the 'undue burden' language is limited to harms inflicted by
> complying with the subpoena"). Therefore, there is no burden on Defendant here.

13  *Strike 3 Holdings, LLC v. Doe*, No. CV 19-140 (TJH)(SPx), 2019 WL 6894526, at *2 (C.D.

14  Cal. July 16, 2019).

15         Although nothing concerning the Florida action is before the Court here, this is also true

16  of that action: Doe was never charged to do or produce anything, nor were damages or any other

17  recourse sought as to Doe.  The court order in Florida simply authorized *the ISP* to release the

18  subscriber's identifying information to Plaintiff (and limited Plaintiff's use of that information

19  to only using it to potentially bring a copyright infringement action to enforce its rights and, if it

20  did so, instructing Plaintiff to request in the court in which it filed such an action that the

21  personal information be kept confidential).  And, Defendant's ISP did not object to providing

22  this information.  Although Doe tries to frame Strike 3's decision to move forward with its

23  copyright claim in federal court as *the* burden, Doe conspicuously fails to point out how Doe

24  has been burdened by *the subpoena*, let alone that this burden is "undue."  *See Strike 3

25  Holdings, LLC v. Doe*, No. CV 18-12609, ECF No. 16, at *6–7 (D.N.J. June 27, 2019) (denying

26  motion to quash and holding "Doe's focus on the cost of defending this entire suit is misplaced.

27  It is the burden of this subpoena that is at issue and insofar as it merely seeks his name and

28                                        8

1   address and seeks it from a third party, that burden is minimal.").  Accordingly, Doe has failed

2   to meet Doe's heavy burden to demonstrate why this third-party subpoena should be quashed.

3                    **B.**     **Doe Has Not Demonstrated Why This Claim Should be Dismissed**

4             Doe's request for dismissal is confusing to say the least.  Although styled as a motion

5   under Rule 41(b), which allows parties to move for dismissal as a sanction for failing to

6   "comply with" the Federal Rules, Doe contends that Strike 3 violated Rule 8(a) – traditionally

7   the providence of a motion under Fed. R. Civ. P. 12(b)(6) – and Rule 11, which is required to be

8   a separate motion unto itself.  "'Courts have been reluctant to impose the ultimate sanction of

9   dismissal with prejudice' because [R]ule 41(b) is a harsh remedy," and usually look for "less

10  drastic alternatives [that] include allowing further amended complaints [and] allowing

11  additional time . . . ."  *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671 (9th Cir. 1981) (citation

12  omitted) (holding dismissal with prejudice appropriate where plaintiff submitted a complaint

13  that "was verbose, confusing and almost entirely conclusory" and "consisted of 48 pages with

14  14 pages of addenda and 9 pages of exhibit" and where plaintiff did not respond to defendant's

15  motion to dismiss "for over 19 months").  It appears that, by invoking this mechanism, rather

16  than Rule 12(b)(6), Doe wishes to convince the Court to sidestep the strong precedent

17  (including this Court's order) that has limited *Cobbler*'s reach until *after* early discovery has

18  commenced.  Since Strike 3's Complaint states a plausible claim under the less demanding Rule

19  12(b)(6) standard, there is no basis to enter terminating sanctions under Rule 41(b).

20                    **1.**     **Strike 3 Complaint Satisfies Rule 8(a)**

21                         **a.**     ***Cobbler* Does Not Support Dismissal of this Action**

22             *Cobbler* did not set a "high-bar" to plead a claim for copyright infringement in

23  BitTorrent cases.  *Contra* [ECF No. 16, at 13].  Indeed, courts do not impose "more onerous

24  pleading rules to deal with particular categories of cases," which is usually left to the

25  "established rulemaking procedures, and not on a case-by-case basis . . . ."  *Jones v. Bock*, 549

26  U.S. 199, 224, 127 S. Ct. 910, 926, 166 L. Ed. 2d 798 (2007) (citation omitted).  In *Cobbler*, the

27  Ninth Circuit held, in part, that *after early discovery occurs* a "plaintiff must allege something

28                                              9

more to create a reasonable inference that a subscriber is also an infringer." *See Cobbler*

*Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1145 (9th Cir. 2018).  Some parties, like Doe, wish

that courts will read this quote in a vacuum and argue that the Ninth Circuit intended something

it never said:  to put an end to all applications for early discovery and, therefore, bar any

meaningful relief to rightsholder's injured by anonymous BitTorrent infringement.[7]  Courts

have specifically rejected this reading: "*Cobbler*[] does not stand for the proposition that

subpoenas may not be used to determine a subscriber's name." *Strike 3 Holdings, LLC v. Doe*,

No. CV 19-00723 (JCS), 2019 WL 2996428, at *3 (N.D. Cal. July 9, 2019).[8]  This Court

expressly laid out this distinction in its Order.

> Once Strike 3 learns the defendant's identity, it cannot rely on a bare allegation
> that a defendant is the registered subscriber of an internet protocol address
> associated with infringing activity to state a plausible claim for direct or
> contributory copyright infringement. *Cobbler Nevada, LLC v. Gonzales*, 901
> F.3d 1142, 1144 (9th Cir. 2018).  However, at this stage of these proceedings,
> and upon the record presented, *Strike 3 properly may serve discovery to
> ascertain the defendant's identity.*

[ECF No. 9, at 1–2] (emphasis added) (citation omitted).  Defendant fails to mention any of the

cases, *let alone this Court's Order on this exact issue*, in the Motion.

---

[7] Doe's discussion of *Cobbler* is rife with the "wishful thinking" logical fallacy.  *See* Bacon, Francis (1620), *Novum Organum* ("The human understanding when it has once adopted an opinion . . . draws all things else to support and agree with it. And though there be a greater number and weight of instances to be found on the other side, yet these it either neglects or despises, or else by some distinction sets aside or rejects[.]").

[8] No court reviewing *Cobbler* has held that it compels quashing a subpoena.  *See e.g., Strike 3 Holdings, LLC v. Doe*, No. CV 18-2648 (VEC), 2019 WL 78987 (S.D.N.Y. Jan. 2, 2019); *Strike 3 Holdings, LLC v. Doe*, No. CV 18-04993 (KAW), 2019 WL 468816 (N.D. Cal. Feb. 6, 2019); *Strike 3 Holdings, LLC v. Doe*, No. CV 18-02637 (MCE)(CKD), 2019 WL 935390 (E.D. Cal. Feb. 26, 2019); *Strike 3 Holdings, LLC v. Doe*, No. CV 19-00167 (KAW), 2019 WL 1865919 (N.D. Cal. Apr. 25, 2019); *Strike 3 Holdings, LLC v. Doe*, No. CV 19-00723-JCS, 2019 WL 2996428 (N.D. Cal. July 9, 2019); *Strike 3 Holdings, LLC v. Doe*, No. CV 18-16593 (MAS), 2019 WL 4745360 (D.N.J. Sept. 30, 2019).

Additionally, all but one out-of-circuit court, discussed *infra*, have found that *Cobbler* does not preclude early discovery. *See e.g., Strike 3 Holdings, LLC v. Doe*, No. CV 18-2720 (GPC)(WVG), 2018 WL 6649504 (S.D. Cal. Dec. 18, 2018); *Strike 3 Holdings, LLC v. Doe*, No. CV 18-06938 (WHO), 2019 WL 402358 (N.D. Cal. Jan. 31, 2019); *Strike 3 Holdings, LLC v. Doe*, No. CV 19-00160 (EMC), 2019 WL 591459 (N.D. Cal. Feb. 13, 2019); *Strike 3 Holdings, LLC v. Doe*, No. CV 19-00232 (EMC), 2019 WL 591460 (N.D. Cal. Feb. 13, 2019); *Strike 3 Holdings, LLC v. Doe*, No. CV 19-73 (WQH)(WVG), 2019 WL 777416 (S.D. Cal. Feb. 21, 2019).

1    Critically, "in *Cobbler*, the district court permitted the plaintiff to subpoena the ISP for

2 the defendant's identifying information, conduct an initial investigation into the defendant, and

3 even depose the defendant."  *Strike 3 Holdings, LLC v. Doe*, No. CV 18-04993 (KAW), 2019

4 WL 468816, at \*2 (N.D. Cal. Feb. 6, 2019).  The Ninth Circuit did not disrupt this or even

5 discuss *in dicta* that it felt that order was wrong or improper – something the Ninth Circuit

6 clearly could (and should) have done if it intended its decision to entirely nullify copyright

7 protections against infringement using BitTorrent.  *See W. Coast Prods., Inc. v. Does 1-1,434,*

8 2012 WL 10132002, at \*4 (D.D.C. Aug. 6, 2012) ("[T]he protections provided to these

9 copyright holders by the Copyright Act would evaporate, unless copyright holders are permitted

10 to engage in this discovery").

11    Instead, the Ninth Circuit specifically noted that the plaintiff's claim against the

12 subscriber as alleged in that suit, "standing alone," was implausible because plaintiff's "counsel

13 learned that the internet service was accessible to both residents and visitors at an adult care

14 home, [and counsel expressly] concluded that 'it does not appear that [the subscriber] is a

15 regular occupant of the residence or the likely infringer.'"  901 F.3d at 1145.  "Although the

16 district court granted leave to depose the subscriber, the deposition revealed no new information

17 regarding the identity of the actual infringer.  Nevertheless, *Cobbler*[] filed a First Amended

18 Complaint and named [the subscriber] as the sole defendant."  *Id.*  That is, after early discovery,

19 the plaintiff essentially conceded that it did not know who the actual infringer was, but

20 nevertheless proceeded with direct and indirect claims against the subscriber.  This stands in

21 stark contrast to the present case where Plaintiff still does not know the identity of the

22 subscriber.  Thus, *Cobbler*'s holding concerning what claims remain plausible *after early*

23 *discovery has commenced* has no application to this present case.  *Cf. Starr v. Baca*, 652 F.3d

24 1202, 1216 (9th Cir. 2011) ("Plaintiff's complaint may be dismissed only when [the] plausible

25 alternative explanation is so convincing that plaintiff's explanation is *im*plausible.") (emphasis

26 original).

27

28                                                11

1   As the Northern District of Illinois recently explained when denying a motion to quash a

2   court-authorized subpoena to an ISP, Doe's reading of *Cobbler* is entirely wrong:

3
> In this case, defendant wants to stop [plaintiff] short of taking any of the steps
4   > that the Ninth Circuit implicitly approved of in *Cobbler Nevada, LLC*. In his
> view, the buck stops after naming the unknown holder of an IP address in a
5   > complaint but before subpoenaing records from the ISP. . . . [H]owever, that
> would effectively deprive [plaintiff] of any opportunity to identify the subscriber,
6   > let alone the actual infringer, and thus leave it with no legal remedy. *See
> Youngblood v. 5 Unknown Cim Corr. Officers*, 536 F. App'x 758 (9th Cir. 2013)
7   > (giving pro se prisoner an opportunity to identify defendants through limited
> discovery).
8   > A better course to chart is to grant leave to [plaintiff] to conduct limited discovery
> and then determine whether the subscriber is the infringer. In other words, this
9   > investigation should come after pleading, not before it. As demonstrated in
> *Cobbler Nevada, LLC*, identifying the subscriber will either lead to identifying the
10  > infringer or it will not.

11  *Malibu Media, LLC v. Doe*, No. 18-5792, 2019 WL 7876473, at *3 (N.D. Ill. Jan. 2, 2019).

12      "Plaintiff is simply attempting to ascertain the subscriber's identity, and is, therefore,

13  permitted to subpoena the ISP for the defendant's identifying information, and conduct an initial

14  investigation into the defendant ." *Strike 3 Holdings, LLC v. Doe*, No. CV 19-00167 (KAW),

15  2019 WL 1865919, at *2 (N.D. Cal. Apr. 25, 2019). "To the extent that [Doe] believes that

16  Plaintiff will be unable to prove its case, that argument is similarly premature, as Plaintiff is

17  only trying to ascertain the defendant subscriber's identity." *Strike 3 Holdings, LLC v. Doe*, No.

18  CV 19-00167 (KAW), 2019 WL 1865919, at *2 (N.D. Cal. Apr. 25, 2019). "Additionally,

19  *Cobbler*[] did not disturb the Ninth Circuit's decision in *Glacier Films (USA), Inc. v. Turchin*,

20  896 F.3d 1033 (9th Cir. 2018)," wherein "the process endorsed by the Ninth Circuit included

21  'allow[ing] copyright holders to seek limited discovery from an Internet Service Provider to

22  establish a potential infringer's identity . . .' just as the court has allowed Strike 3 to do here."

23  *Strike 3 Holdings, LLC v. Doe*, No. CV 18-02637 (MCE)(CKD), 2019 WL 935390, at *4 (E.D.

24  Cal. Feb. 26, 2019).

25                  **b.      Doe's Reliance on the N.J. Opinion is Misplaced**

26      With such strong precedent from courts throughout the Ninth Circuit, it is curious then

27  that the only case Doe submits in support of extending the holding in *Cobbler* to situations not

28                                          12

considered – and not intended by – the Ninth Circuit is a Magistrate Judge's opinion from the District of New Jersey, which is currently the subject of an appeal.  *See Strike 3 Holdings, LLC v. Doe*, No. CV 18-12585 (NLH/JS), 2019 WL 5446239 (D.N.J. Oct. 24, 2019), *on appeal*, No. CV. 18-16564, ECF No. 9 (D.N.J. Oct. 31, 2019) ("N.J. Opinion").  Doe's reliance on this unpublished magistrate judge's decision is flawed for several reasons.

As a preliminary matter, the D.N.J. matter concerned whether *Plaintiff* met its burden to show that "good cause" existed to conduct limited early discovery under Rule 26.  In contrast, Doe's motion here concerns whether *Doe* has met Doe's "heavy burden" under Rule 45 to quash the subpoena already authorized by the Court.  Rule 45 sets forth only six circumstances in which a Court may quash a subpoena, for which Doe – not Plaintiff – bears the burden of proof.  "[A]n absence of good cause for discovery prior to the Rule 26(f) conference is not one of the delineated grounds for quashing a subpoena."  *Gonzalez v. Whitney Merlynn Peterson*, No. CV 17-0034, 2017 WL 2633491, at *2 (D. Mont. June 16, 2017).  In contrast, the standard that courts use to determine if early discovery should be permitted under Rule 26 is "good cause," *see, e.g.*, *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999), a standard this Court has already determined Plaintiff has met.  [ECF No. 9]; *see also Strike 3 Holdings, LLC v. Doe*, No. 17-1680, 2017 WL 5001474, at *7 n.10 (D. Conn. Nov. 1, 2017) (reminding Doe that "[i]n considering whether to make a motion to quash the subpoena . . . the Court has already analyzed the requisite principal factors to determine that such a subpoena should be allowed . . . .").  The two inquiries are fundamentally different.[9]

Setting aside this procedural distinction, the N.J. Opinion is also rife with legal and factual errors.  Although many of these errors are addressed in detail in Strike 3's pending

_____

[9] *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-14138, ECF No. 15 at 1 (D.N.J. June 27, 2019) (denying motion to quash and declining to apply decisions denying early discovery because, in addition to being reversed and "persuasively rejected," they "address a different issue" and were in "a different posture procedurally"); *Strike 3 Holdings, LLC v. Doe*, 331 F.R.D. 14 (E.D.N.Y. 2019) (holding that motion to quash under Rule 45 represents a "fundamentally" different "procedural posture" from request to conduct early discovery under Rule 26 and that "[t]he two inquiries are qualitatively different").

13

appeal of the N.J. Opinion, Doe's brief sets forth – verbatim[10] – only the portion of the N.J. Opinion concerning the Magistrate Judge's erroneous conclusion that, contrary to the standard set forth in *Twombly* and *Iqbal*, a plaintiff must prove its allegations at the pleading stage, and that its inability to do so – since the facts necessary to do so are uniquely in the possession of the defendant – justifies denying leave to serve a discovery request for those very same facts. That is definitively not the correct standard.

The Magistrate Judge's fundamental error was in deciding that the Ninth Circuit intended its decision to apply both after *and before* early discovery occurs, but ignores *Cobbler*'s procedural history and its recognition that early discovery is "part of the puzzle" a plaintiff must solve to identify the "true" infringer.  901 F.3d 1142, 1145 (9th Cir. 2018). Indeed, it also ignores that a few weeks prior to releasing *Cobbler*, the Ninth Circuit ruled in a similar BitTorrent copyright infringement case that "allow[ing] copyright holders to seek limited discovery from an Internet Service Provider to establish a potential infringer's identity[,]" is  "practical" and "sensible."  *Turchin*, 896 F.3d at 1036, 1038 (9th Cir. 2018).

Paying short shrift to the "mountains" of case law authored by judges across the country to the contrary,[11] the Magistrate Judge recognized, in a gross understatement, that "some decisions" interpret *Cobbler* to "only appl[y] after the plaintiff has an opportunity to obtain discovery to identify a subscriber."  2019 WL 5446239 at *9.  But, in fact, *every* court that has considered the issue has reached that conclusion.  *See supra* n.8.  And the cases string-cited by the Magistrate Judge, *see* 2019 WL 5446239 at *6, to support his misinterpretation of *Cobbler*

---

[10] The last five pages of Doe's brief is lifted word-for-word from the N.J. Decision.  The first two pages of this section is block-quoted (and single-spaced), but the remainder is inexplicably set forth in normal text, as if Doe is arguing (or rather plagiarizing) the words of the court themselves.  This is the same brief in which Doe's counsel states, with what can only be described as unintended irony, that "[t]his does not look good to law students and the public who are looking in and watching our justice system at work."  ECF No. 16, at 15.

[11] The Magistrate Judge did not merely disagree with the majority of courts in this country, but went so far as to insultingly suggest that all these cases have been decided in Strike 3's favor "by virtue of inertia or some other reason" – rather than the merits.  2019 WL 5446239, at *7.

14

1  fail to do so, either because they (1) pre-date *Cobbler*,[12] or (2) were issued after early discovery

2  was *permitted*.[13]

3        But this Court need not rely on the studied opinions of every other federal court, which

4  reject the Magistrate Judge's misinterpretation of *Cobbler*, since it is also unsupported by logic.

5  As Judge Grimm has succinctly explained:

6        Unless [Plaintiff] is permitted, at least in the initial stages of litigation, to proceed
7        against a subscriber, it will be caught in a Catch–22 in which it cannot commence
        an action without engaging in discovery to determine the actual infringer but cannot
8        engage in discovery without first filing a complaint.

9  *Malibu Media, LLC*, No. CV 13-365 (PWG), 2014 WL 7188822, at *6 (D. Md. Dec. 16, 2014);

10  *see also Strike 3 Holdings, LLC v. Doe*, No. 18-1856, ECF No. 5 at *2 (D. Nev. Oct. 17, 2018)

11  ("Interpreting *Cobbler* to require plaintiffs to identify Does without allowing plaintiffs the tools

12  to do so would not serve the interests of justice").  In short, the Magistrate Judge's interpretation

13  – that Plaintiff must *already* have the information it seeks *before* seeking discovery for that

14  same information – is nothing more and nothing less than a textbook example of circular

15  reasoning.

16        Nor is the issue, as the Magistrate Judge claimed, whether the Court should *create* a

17  remedy for Strike 3 that does not exist.[14]  "'Congress [has] specifically acknowledged that

18

_____

19        [12] *See Strike 3 Holdings, LLC v. Doe*, No. 18-2637, 2019 WL 935390, *4 (E.D. Cal. Feb.
26, 2019) (declining to follow *Breaking Glass Pictures, LLC v. John Does 118-162*, No. 13-
20  600, 2013 WL 3930474 (D. Ariz. July 29, 2013) as an "outlier that is not representative of case
law after *Cobbler Nevada*.").

21        [13] *See Malibu Media, LLC v. Doe*, No. 18-450, ECF No. 12 (granting expedited
22  discovery) *and* No. 18-450, 2018 WL 6446404, at *3 (N.D. Ill. Dec. 10, 2018) (dismissing
*amended* complaint); *Venice PI, LLC v. Huseby*, No. 17-1160, ECF No. 8 (granting expedited
23  discovery) *and* No. 17-1160, 2019 WL 1572894, at *1 (W.D. Wash. Apr. 11, 2019) (dismissing
*amended* complaint); *PTG Nevada, LLC v. Chan*, No. 16-1621, ECF No. 11 (granting expedited
24  discovery) *and* No. 16-1621, 2017 WL 168188, at *2 (N.D. Ill. Jan. 17, 2017) (dismissing
*amended* complaint).

25        [14] Shockingly, the Magistrate Judge actually claimed – in a written opinion – that "the
law does not provide a remedy for every wrong."  2019 WL 5446239, at *15.  That is, of
26  course, squarely at odds with one of the cornerstones on which our country's judiciary has been
established:  "[I]t is a general and indisputable rule, that where there is a legal right, there is also
27  a legal remedy by suit or action at law, whenever that right is invaded."  *Marbury v. Madison*, 5
U.S. 137, 163 (1803) (quoting Blackstone's Commentaries, vol. 3., p.23); *see also Texas & P.*

28

15

consumer-based, noncommercial use of copyrighted materials constituted actionable copyright infringement' and 'contemplate[d] that suits like this were within the Act.'" *Glacier Films*, 896 F.3d at 1040 (quoting *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 500 (1st Cir. 2011), *cert. denied*, 566 U.S. 1017 (2012)). "The fact remains that file sharing of copyrighted work is infringement." *Strike 3 Holdings,* 2019 WL 4745360 at *6 (citing *Metro-Goldwyn-Mayer Studies Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005). Indeed, courts in BitTorrent cases have specifically recognized that "[t]he fact that Congress has not acted does not mean that courts should take it upon themselves to provide more effective enforcement mechanisms to potential plaintiffs. *But it also does not mean that courts should cut off potential plaintiffs from those enforcement mechanisms that currently exist.*" *Strike 3 Holdings, LLC v. Doe*, No. CV 19-5818 (AT)(JLC), 2019 WL 5459693, at *3 (S.D.N.Y. Oct. 9, 2019) (citation and quotation marks omitted) (emphasis added). "Plaintiff must be able to enforce its rights, which would be made difficult – if not impossible – if any defendant could quash a subpoena based on the mere possibility that someone else used the defendant's IP address." *Strike 3 Holdings,* 2019 WL 4745360 at *6. Thus, Congress *has* created a remedy, but the Magistrate Judge improperly deprived Plaintiff of the ability to pursue it. Accordingly, this Court should not adopt that opinion's reasoning with respect to *Cobbler* or early discovery.

### c.   Strike 3 Has Presented a Cognizable Claim for Copyright Infringement

This Court should also reject Doe's attempt to argue that Plaintiff's complaint fails to plead a claim under Rule 8(a) by insisting that Strike 3's claim is "pure speculation" that would not survive such a challenge and is thus sanctionable under Rule 41(b). This argument misapprehends the "minimal burdens [Rule 8 places] on the plaintiff at the pleading stage." *Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019) (citation omitted). Indeed, every court

---

*Ry. Co. v. Rigsby*, 241 U.S. 33, 39-40 (1916) (discussing equitable maxim of *Ubi Jus Ibi Remedium*); *Ashby v. White*, 2 Raym. Ld. 938 (H.L. 1703).

1   that has reviewed Strike 3's claim subject to a motion to dismiss has held it survives a Rule

2   12(b)(6) challenge.[15]

3         Strike 3 need only plead "a short and plain statement of the claim showing that [it] is

4   entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  "A motion to dismiss under Federal Rule of

5   Civil Procedure 12(b)(6) . . . 'tests the legal sufficiency of a claim,'" *Pae v. Select Portfolio*

6   *Servicing, Inc.*, No. CV 15-1132 (BLF), 2015 WL 12915113, at *1 (N.D. Cal. July 10, 2015)

7   (quoting *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011)), by

8   determining whether Plaintiff has presented "enough facts to state a claim to relief that is

9   plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974,

10  167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

11  content that allows the court to draw the reasonable inference that the defendant is liable for the

12  misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868

13  (2009) (citation omitted).  "[A] well-pleaded complaint may proceed even if it strikes a savvy

14  judge that actual proof of those facts is improbable, and 'that a recovery is very remote and

15  unlikely.'"  *Twombly*, 550 U.S. at 556 (citation omitted).

16        There can be no dispute that Plaintiff has adequately stated its claim such that it satisfies

17  Rule 8.  In fact, although it is not applicable to this matter, Plaintiff's complaint even satisfies

18  Rule 9's heightened pleading standard, which requires a party to allege "the who, what, when,

19  where, and how" of the misconduct charged.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

20  1103–06 (9th Cir. 2003).  Plaintiff's complaint alleges the "who" (the subscriber), the "what"

21  (copyright infringement of specific works produced and registered by Plaintiff), the "where"

22  (established by geo-location technology), the "when" (recorded down to the date, hour, minute

23  and second), and the "how" (through the BitTorrent protocol).  ECF Nos. 1, 1-1.  The only

24

25

26        [15] *See e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. CV 18-06488, ECF No. 24 (N.D. Ill. Apr.
4, 2019); *Strike 3 Holdings, LLC v. Doe*, No. CV 18-01874 (GLR), ECF No. 17 (D. Md. Oct.

27  26, 2018); *Strike 3 Holdings, LLC v. Doe*, No. CV 18-14060, ECF No. 14 (E.D. Mich. May 31,
2019).

28                                          17

missing item of information is the defendant's name, which is sought by the discovery at issue here – it is the "piece of the puzzle" that *Cobbler* specifically acknowledged Strike 3 could seek.

Doe does not actually challenge whether Strike 3 has stated a claim for direct copyright infringement here.  Strike 3 clearly outlines its ownership of the copyrights-in-suit and discusses how several of its rights were infringed by someone using the IP address 76.102.26.213 to download its works over the BitTorrent network.  *Cf. Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991).  Rather, Doe contends that Strike 3 has not sufficiently demonstrated that the unknown subscriber is plausibly the infringer.  This line of reasoning fails for several reasons.

First, "Plaintiff's burden at the pleading stage is that of plausibility, not certainty." *Strike 3 Holdings*, No. CV 18-16593 (MAS), 2019 WL 4745360 at *4 (collecting cases).  "Plaintiff is not required to 'sufficiently *establish*[ ] defendant did the infringing'" . . . Rather, Plaintiff must only allege facts 'that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Strike 3 Holdings, LLC v. Doe*, No. 18-1490, 2019 WL 1529339, at *3 (W.D.N.Y. Apr. 8, 2019) (citation omitted).  "To require [Strike 3] to prove that the subscriber more likely than not is the infringer – that is, to meet its ultimate burden of proof – at the pleading stage would turn the civil litigation process on its head[.]" *Malibu Media*, No. CV 13-365 (PWG), 2014 WL 7188822 at *5.  Indeed, "Plaintiff may be wrong—but it is not required to prove its allegations in order to adequately plead a claim of infringement under *Twombly*."  *ME2 Prods., Inc. v. Kariuki*, No. 17-1077, 2018 WL 2088306, at *2 (W.D. Wash. May 4, 2018).  The whole point of Strike 3's application is to uncover the bare minimum information it would need to further investigate its claim to determine the identity of the infringer and, if so, to effectuate service of process.  *See Strike 3 Holdings*, No. CV 19-00167 (KAW), 2019 WL 1865919 at *2.

Second, "[i]n reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff."  *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1048

18

1 (S.D. Cal. 2019) (citing *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009)).  "[T]he

2 complaint has pled facts that plausibly demonstrate that the subscriber[] identified in the

3 complaint[] committed the alleged infringement."  *In re Malibu Media Copyright Infringement*

4 *Litig.*, No. CV 15-04170 (WHA), 2016 WL 926906 at *4; *Bleiberg Entm't, LLC v. John & Jane*

5 *Does 1-47*, No. CV 13-00595 (PHX)(GMS), 2013 WL 3786641, at *6 (D. Ariz. July 19, 2013)

6 ("[T]he Complaint has stated sufficient facts to believe that it is at least "plausible " that the

7 subscriber to the IP address participated in the downloading.").  The reasonable inference also

8 supports this conclusion.  "[I]t takes no great imagination to see how evidence that a file was

9 downloaded by a certain IP address could support a plausible claim that the file was

10 downloaded by the subscriber at that IP address." *Strike 3 Holdings, LLC v. Doe*, No. CV 19-

11 396 (GJH), 2020 WL 917090, at *3 (D. Md. Feb. 25, 2020) (citation omitted).  "It is plausible

12 that files downloaded using a particular IP address were downloaded by the subscriber of that

13 address.  The possibility that a family member, guest, or neighbor may have downloaded the

14 Works does not render Plaintiff's claims implausible." *Malibu Media, LLC v. Doe*, No. CV 16-

15 1739, 2017 WL 1050573, at *2 (D.N.J. Mar. 20, 2017) (citation omitted).

16         Finally, Doe forgets the good cause analysis that the Court has already conducted.  To

17 obtain the subpoena, Strike 3 was required simply to "identif[y] the Doe Defendant with

18 sufficient specificity [such] that the court can determine that he or she is a real person who can

19 be sued in federal court*.*"  *Strike 3 Holdings, LLC v. Doe*, No. CV 18-4988 (LB), 2018 WL

20 4587185, at *2 (N.D. Cal. Sept. 24, 2018).  Plaintiff has demonstrated this: "It alleges that

21 [Doe] downloaded Strike 3['s] copyrighted adult motion pictures and distributed them over the

22 BitTorrent network," and that Doe "had to direct his or her BitTorrent client to download the

23 media file." *Id.*  "These facts indicate that [Doe] is an identifiable adult who likely is the

24 primary subscriber of the IP address or someone who resides with and is known to the

25 subscriber." *Id.*  Again, the purpose of Plaintiff's motion is to uncover just enough information

26 for it to further investigate and identify the infringer and then amend its complaint accordingly

27 (and accomplish service of process). *See Strike 3 Holdings, LLC v. Doe*, No. CV 18-2648

28

1  (VEC), 2019 WL 78987, at *3 (S.D.N.Y. Jan. 2, 2019) ("identifying Defendant is a necessary

2  step") (collecting cases).

3       "Under these circumstances, Plaintiff's subpoena is entirely proper."  *Strike 3 Holdings,*

4  *LLC v. Doe*, No. CV 17-9659 (VEC), 2018 WL 2371730, at *2 (S.D.N.Y. May 23, 2018).

5  Plaintiff not only states a plausible claim for relief in its Complaint, it demonstrated good cause

6  for limited early discovery in its application before the Court.  Since Strike 3 has satisfied the

7  liberal plausibility standard under Rule 8(a), it has not failed "to comply with" the Federal Rules

8  of Civil Procedure.  Accordingly, there is no basis for which the Court can enter terminating

9  sanctions pursuant to Fed. R. Civ. P. 41(b), and Doe's Motion to Dismiss must fail.

10       **2.  Any Delays in Unmasking the Infringer Are the Result of Doe's**

11       **Contradicting Arguments and Dilatory Conduct**

12       **a.  Doe Failed to Comply with the Strict Procedural Safeguards**

13       **of Rule 11(c)(2)**

14       Doe's attempt to use the sanctioning power of Rule 41(b) as a Trojan Horse to sneak in a

15  Rule 11 motion, while completely sidestepping the mandatory procedural safeguards, is highly

16  improper.  Rule 11(c) "place[s] stringent notice and filing requirements on parties seeking

17  sanctions."  *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005).  "A Rule 11 motion for

18  sanctions *must* be served on opposing counsel twenty-one days before filing the motion with the

19  court, providing the opposing counsel a 'safe harbor . . . to give the offending party the

20  opportunity . . . to withdraw the offending pleading and thereby escape sanctions.'"  *Winterrowd*

21  *v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 826 (9th Cir. 2009) (quoting *Barber v. Miller*, 146

22  F.3d 707, 710 (9th Cir. 1998)) (emphasis added).  "Failure to provide the required notice

23  precludes an award of Rule 11 sanctions . . . ."  *Id.* (citation omitted).  Additionally, "that

24  motion *must* be separate 'from other motions or requests.'"  *Holgate*, 425 F.3d at 677–78

25  (quoting Fed. R. Civ. P. 11(c)(1)(A)) (emphasis added).

26       Doe did none of that.  He never "served under Rule 5" a separate motion for sanctions

27  "describing the specific conduct that allegedly violates Rule 11(b)."  *See* Fed. R. Civ. P.

28       20

11(c)(2).  Nor did Doe comply with the twenty-one-day safe harbor requirement.  *See id.*
Instead, Doe not only dove right in with filing the motion with the Court, he styled it as a Rule
41(b) motion to argue-by-proxy these unfounded Rule 11(b) violations while disregarding the
clear strictures of Rule 11(c)(2).  *See also Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.*,
834 F.2d 833, 835 (9th Cir. 1987) ("We have required notice and an opportunity to be heard in
sanctioning attorneys pursuant to authority other than Rule 11.") (collecting cases); Fed. R. Civ.
P. 11(c)(1).  For this defect alone, Doe's Motion must fail.

Accordingly, "as a matter of law" there is "no basis" for Doe to prevail on his Rule 11
argument.  *See Winterrowd*, 556 F.3d at 826; *Holgate*, 425 F.3d at 678 ("We enforce this safe
harbor provision strictly.") (citing *Radcliffe v. Rainbow Const. Co.,* 254 F.3d 772, 788–89 (9th
Cir. 2001)).  And, since Strike 3 did not violate Rule 11 – Doe did – there is no basis for a Rule
41(b) sanction either.

**b.      There Is No Substantive Violation of Rule 11(b)**

Fatal procedural shortcomings aside, Strike 3 has not violated any of substantive tenets
of Rule 11(b).  Doe proffers two flawed theories contending that Strike 3's application for early
discovery, which over three hundred judges across the country have granted, violates Rule
11(b).  First, Doe argues that Strike 3's claim cannot meet the *Cobbler* standard and is not
"warranted by existing law . . . ."  [ECF No. 16, at 18–19] (citing Fed. R. Civ. P. 11(b)(2)).  But
as discussed above, Strike 3's Motion does not violate *Cobbler* because *Cobbler*'s holding is
simply not relevant to the current proceeding.  Moreover, even if this Court were to similarly
interpret *Cobbler* to apply where the Ninth Circuit never even suggested it would, contrary to
the interpretation reached by the vast majority of other courts that have considered the issue,
Doe's argument ignores the second part of Rule 11(b)(2), which allows for "a nonfrivolous
argument for extending, modifying, or reversing existing law . . . ."  Again, Doe fails to provide
an "objective" basis on which Strike 3's discovery request is improper.  *See G.C. & K.B.
Investments, Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003).  Consequently, even assuming
Doe's interpretation of *Cobbler* is correct – which it is not – Strike 3 certainly has a

21

1  nonfrivolous argument supporting its position that *Cobbler* does not upend its discovery

2  request.  This is bolstered by the myriad decisions that have held *Cobbler* inapt during this stage

3  of the litigation.

4  Second, and related to the above argument, Doe also contends that Plaintiff "cause[d]

5  unnecessary delay [and] needlessly increase[d] the cost of litigation" by filing its motion for

6  early discovery that cannot survive *Cobbler*.  [ECF No. 16, at 18–19] (citing Fed. R. Civ. P.

7  11(b)(1)).  This is compounded, Doe suggests, by Strike 3 first filing the motion in state court to

8  supposedly avoid *Cobbler*, then in federal court, where *Cobbler* controls.  Here, Doe overstates

9  *Cobbler*'s pull and understates the purpose of the motions: to uncover the subscriber's identity.

10  Defendant's complaint about the state court proceeding and subpoena – which was

11  entirely proper and authorized by a judge after a hearing – does not impact this analysis.  *Cf.* 28

12  U.S.C. § 1738.  Indeed, there is "clear case law from this circuit," *Smith v. Cook*, No. CV 17-

13  00961 (AJB)(WVG), 2018 WL 1185221, at *5 n.4 (S.D. Cal. Mar. 7, 2018), holding "that

14  sanctions cannot be imposed under Rule 11 for filing a paper in state court."  *Hurd v. Ralphs*

15  *Grocery Co.*, 824 F.2d 806, 808 (9th Cir. 1987).  The mere fact that Strike 3 first sought an

16  order from state court does not violate Rule 11, nor was it done to cause unnecessary delay.

17  To be sure, Rule 11 was amended in 1993 to broaden its scope, empowering federal

18  courts to sanction frivolous arguments contained in papers originally brought before a state

19  court that a party "later advocate[es]" in a federal proceeding.  *See Buster v. Greisen*, 104 F.3d

20  1186, 1190 (9th Cir. 1997), *as amended on denial of reh'g* (Mar. 26, 1997).  But since Strike 3

21  did not raise a frivolous argument in state court, Doe's concerns about Strike 3's failure to

22  comply with *Cobbler* in *that* proceeding (where no copyright claim was made) are entirely

23  beside the point.  *Cf. GRiD Sys. Corp. v. John Fluke Mfg. Co.*, 41 F.3d 1318, 1319 (9th Cir.

24  1994) ("The suit filed in state court is an entirely separate action, not subject to the sanctioning

25  power of the district court").

26  Doe also bemoans that Strike 3 filed its copyright claim in federal court after Doe filed a

27  motion to quash Plaintiff's subpoena issued pursuant to the state court's order.  But Doe's

28

motion complained that Strike 3 should file suit again him in Federal Court.[16]  If anything, to avoid further delays, Strike 3 complied *with Doe's request*.

The irony should not be lost by this Court regarding the fact that Doe, who now asserts that Strike 3 is protracting litigation by filing this suit, originally argued that Strike 3's state claim was preempted by federal law but now has turned around and argued that filing a claim in his desired forum violates Rule 11.  That argument is also meritless.  There was no claim for copyright infringement in the complaint before the state court, nor any right "equivalent to" a copyright.  *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001); *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, 596 F.3d 1313, 1325 (11th Cir. 2010).  The bill of discovery is a cause of action in equity that simply sought information in the form of a court order authorizing a subpoena on Doe's ISP.  It is wholly a creature of state law and thus properly the providence of state court.  And of course, even assuming, arguendo, that Doe's federal preemption defenses in the Florida court were successful, the result would be the same as it is now: Strike 3 would be required to bring its claim for copyright infringement in federal court.  *See Botsford v. Blue Cross & Blue Shield of Montana, Inc.*, 314 F.3d 390, 398 (9th Cir. 2002), *opinion amended on denial of reh'g*, 319 F.3d 1078 (9th Cir. 2003) (holding "the federal remedies displace state remedies" when a state claim is preempted).

The same would be true if the state court sided with Doe on his challenge to personal jurisdiction.  "[A] dismissal for want of personal jurisdiction is not a judgment 'on the merits' for the purpose of res judicata."  *Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) (collecting cases); *cf. Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 504, 121 S. Ct. 1021, 1026, 149 L. Ed. 2d 32 (2001) (holding Rule 41(b) is not a "preclusion-establishing rule").  As a result, Strike 3 would not have been precluded from bringing its copyright claim before this Court, which undoubtedly has personal jurisdiction over Doe.  By bringing its copyright infringement claim before this Court, Strike 3 broke Doe's

---

[16] Doe's also contends that Doe's name and address are private information that are undiscoverable.  That argument is addressed above and has been rejected by virtually every court that has confronted it.

Opposition to Defendant's Second Motion to Quash Subpoena and Motion to Dismiss

Case No.  5:19-cv-08239-VKD

1   gridlock to have its copyright infringement claims heard on the merits.  This is not a delay; this

2   is promptly proceeding with litigation.

3   **V.      CONCLUSION**

4          For the foregoing reasons, Strike 3 respectfully requests this Court deny Doe's Motion

5   to Quash Subpoena and Motion to Dismiss.

6   Date: March 17, 2020                          **Law Offices of Lincoln Bandlow, PC.**

7                                                 By: _____

8                                                 Lincoln Bandlow, Esq.
                                                  *Attorney for Plaintiff*

9                                                 Strike 3 Holdings, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Opposition to Defendant's Second Motion to Quash Subpoena and Motion to Dismiss

Case No.  5:19-cv-08239-VKD